

ZELLER & WIELICZKO, LLP
ATTORNEYS AT LAW

ZELLER & WIELICZKO, LLP
Eric J. Riso, Esquire
120 Haddontowne Court
Cherry Hill, New Jersey 08034
Phone: (856) 428-6600
Attorneys for Defendants, Borough of Glassboro,
Mayor John E. Wallace, III and Police Chief Ryan Knight

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
### (Camden Vicinage)

| | |
|---|---|
| Jarif Alam, Anthony Autenrieth, Salem Barzak, Jason Blunt, Anthony Boccio, Brian Deem, Christopher Dineen, Kuba Jagoda, Nashawn Jones, Ryan Kennedy, Nick Kistner, Quintin Llano, Timothy Mancivalano, Adrian Martinez, Michael Niedjieicki, Ethan Raderman, Jonathan Rembish, Crosby Ruhalter, Michael Shaw, Gavin Singer, Ariel Lopez Torres, Shane Yiu, on behalf of themselves and a class of all other similarly situated residential and commercial consumers, | Removed from the<br><br>SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>GLOUCESTER COUNTY<br>DOCKET NO.: GLO-L-1154-25 |
| Plaintiffs, | |
| v. | **NOTICE OF REMOVAL** |
| The Borough of Glassboro, Mayor John E. Wallace, III, Police Chief Ryan Knight, and John Does 1-100 (a fictitious name for all past Mayors, Police Chiefs and any and all police officer who enforced noise ordinance §354-22 and §327-3, | |
| Defendants. | |

**TO:**   Clerk of the Court
United States District Court for the District of New Jersey
Mitchell H. Cohen Building & U.S. Courthouse
4th and Cooper Streets
Camden, New Jersey 08101

1

**PLEASE TAKE NOTICE** that Defendants, Borough of Glassboro, Mayor John E. Wallace, III and Police Chief Ryan Knight, by and through their undersigned counsel, hereby remove this matter pursuant to 28 U.S.C. §§ 1331, 1441, and 1446 from the Superior Court of New Jersey, Law Division, Gloucester County (the "State Court") to the United States District Court for the District of New Jersey, Camden Vicinage.  In support of the Notice of Removal, Defendants respectfully state as follows:

## BACKGROUND

1. On August 27, 2025, Plaintiffs commenced a lawsuit in the Superior Court of New Jersey, Law Division, Civil Part, Gloucester County by filing a Complaint ("Complaint") captioned as Jarif Alam, et al v. The Borough of Glassboro, et al, Docket No. GLO-L-1154-25 (the "State Court Action").  The matter involves a challenge to the Borough's Noise Ordinance, as codified in Chapter 327 and Section 354-22 of the Borough Code.  See Exhibit "A."

2. Various federal claims are asserted in the State Court Action, including, *inter alia*, claims under 42 U.S.C. § 193, the Fourth Amendment, Eighth Amendment and Fourteenth Amendment of the United States Constitution.  See Exhibit "A" at Counts Five and Six.

3. The State Court Action was served on the Borough Defendants on August 29, 2025. See Exhibit "B."

## BASIS FOR REMOVAL

4. This Court has original jurisdiction over the above-captioned matter under the provisions of 28 U.S.C. § 1331 because Counts Five and Six of the Complaint arise from the laws of the United States.

5. The pending State Court Action is a civil action of which this Court has original jurisdiction under the provisions of 28 U.S.C. § 1331 and is one which may be removed to this

2

Court by Defendants pursuant to the provisions of 28 U.S.C. § 1441, particularly sections 1441(a) and 1441(c).

6. This Court has supplemental jurisdiction over the remaining counts of the Complaint under 28 U.S.C. § 1367 because they arise from the same case or controversy.

## REMOVAL IS TIMELY

7. This Notice of Removal is being filed within thirty (30) days of August 29, 2025, the date on which the Complaint was served. Pursuant to Fed. R. Civ. P. 6(a) and 28 U.S.C. § 1446(b), this Notice of Removal is timely. See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344 (1999).

## VENUE IS PROPER

8. The United States District Court for the District of New Jersey is the federal judicial district embracing the State Court where Plaintiffs originally filed this suit. See 28 U.S.C. § 1441(a).

## STATE COURT NOTIFICATION AND NOTICE ALL COUNSEL OF RECORD

9. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served on Plaintiffs' counsel in the State Court Action and will be filed with the State Court.

## MISCELLANEOUS

10. No admission of fact, law, or liability is intended by this Notice of Removal and Defendants expressly reserve all defenses, affirmation of defenses, and motions.

WHEREFORE, Defendants, Borough of Glassboro, Mayor John E. Wallace, III, and Police Chief Ryan Knight, by and through its undersigned counsel, and through the filing of this Notice of Removal, serving a copy of this Notice of Removal on Plaintiffs' counsel in the

120 Haddontowne Court
Cherry Hill, NJ  08034
P 856.428.6600
F 856.428.6314

State Court Action, and filing a copy of this Notice of Removal with the clerk of the State

Court effect the removal of said civil action to this Honorable Court.

Respectfully submitted,

ZELLER & WIELICZKO, LLP
Attorneys for Defendants


/s/ Eric J. Riso
Dated:  September 15, 2025          ERIC J. RISO, ESQUIRE

4

# EXHIBIT "A"

**R.C. SHEA & ASSOCIATES**
Counsellors At Law, P.C.
244 Main Street – PO Box 2627
Toms River, New Jersey 08754-2627
Tel: (732) 505-1212/ Fax (732) 505-0423
MJD: Atty. #020391998
Attorneys for Plaintiffs
File Number:  16236

| | |
|---|---|
| Jarif Alam, Anthony Autenrieth, Salem Barzak, Jason Blunt, Anthony Boccio, Brian Deem, Christopher Dineen, Kuba Jagoda, Nashawn Jones, Ryan Kennedy, Nick Kistner, Quintin Llano, Timothy Mancivalano, Adrian Martinez, Michael Niedjieicki, Ethan Raderman, Jonathan Rembish, Crosby Ruhalter, Michael Shaw, Gavin Singer, Ariel Lopez Torres, Shane Yiu, on behalf of themselves and a class of all other similarly situated residential and commercial consumers,<br><br>Plaintiff(s),<br><br>vs.<br><br>Borough of Glassboro, Mayor, John E. Wallace, III, Police Chief Ryan Knight, and John Does, 1-100 (a fictitious name for all past Mayors, Police Chiefs and all any police officer who enforced noise ordinance§354-22 and §327-3,<br><br>Defendants. | : SUPERIOR COURT OF NEW JERSEY<br>: GLOUCESTER COUNTY<br>: LAW DIVISION<br>:<br>: Docket No.: GLO-<br>:<br>:<br>: CIVIL ACTION<br>:<br>:<br>: **CLASS ACTION COMPLAINT**<br>: |

1

## PREAMBLE

1.    For decades the Borough of Glassboro, through its Mayor and Police, have been prosecuting and punishing residents under Noice Control Ordinance §354-22 that was never approved as required by state law and is thus ultra vires and unenforceable.

2.    More specifically, since approximately 1976, the defendants have been wrongfully, knowingly, and maliciously prosecuting and convicting residents of the Borough of Glassboro for violating its Noise Control Ordinance §354-22, "Creation of Loud and Unreasonable Noise" when, in fact, the Ordinance was never approved by the New Jersey Department of Environmental Protection (hereinafter referred to as the "NJDEP") pursuant to the Noise Control Act, N.J.S.A. 13:1G-21, thereby rendering the defendant's Ordinance §354-22 ultra vires, unenforceable, null and void.

3.    The last time the Borough of Glassboro submitted its Noise Ordinance to the NJDEP for approval was on September 30, 1976, and it was "disapproved" as currently displayed on the NJDEP's website: https://www.nj.gov/dep/enforcement/noise-control.html

| Gloucester | Deptford | no record | Disapproved |
| Gloucester | Glassboro | September 30, 1976 | Disapproved |
| Gloucester | Logan | no record | Disapproved |
| Gloucester | Monroe | December 28, 1997 | Approved |
| Hudson | Bayonne | July 30, 1998 | Approved |

## THE PARTIES

4.    The plaintiffs, Jarif Alam, Anthony Autenrieth, Salem Barzak, Jason Blunt, Anthony Boccio, Brian Deem, Christopher Dineen, Kuba Jagoda, Nashawn Jones, Ryan Kennedy, Nick Kistner, Quintin Llano, Timothy Mancivalano, Adrian Martinez, Michael

2

Niedjieicki, Ethan Raderman, Jonathan Rembish, Crosby Ruhalter, Michael Shaw, Gavin Singer, Ariel Lopez Torres, and Shane Yiu, are current or former residents of the Borough of Glassboro, who have been wrongfully prosecuted, found guilty, fined, and sentenced to Community Service for allegedly violating the defendant's unlawful, invalid, ultra vires and unenforceable Ordinance §354-22, and they bring this Action against the defendants on behalf of themselves and a class of all other similarly situated persons.

5.    The named plaintiffs and class members are all similarly situated people who have been wrongfully prosecuted, found guilty, fined, and sentenced to Community Service for allegedly violating the defendant's unlawful, invalid, ultra vires and unenforceable Ordinance §354-22. These underlying convictions have not been vacated, appealed, or otherwise overturned.

6.    The defendant, Borough of Glassboro, is in Gloucester County. The Borough was founded in 1779 and incorporated in 1920. The Borough's population is around 23,149 residents as of the 2020 census, per Wikipedia. Its principal place of business is located at 1 South Main Street, Glassboro, New Jersey.

7.    Within the Borough of Glassboro

> The Mayor and Council Members create, pass, and amend local laws, as well as approve Glassboro's budget every year.
>
> The Borough Council serves as a link between the citizens of Glassboro and their municipal government. Council Members help constituents by connecting them to resources, services, and Borough departments. They serve as advocates for all Glassboro citizens. The Borough Council is the legislative body of the Borough of Glassboro. The council is made up of six Council Members that represent the entire Borough.

3

Mayor and Council Members establish and put in place public policy to meet the continuous and changing needs of Glassboro. They create these policies by initiating legal documents, such as ordinances and laws. Every year, they also review and approve the Borough's operating and capital budget. They track Borough services throughout the year to guarantee their efficiency and reasonable cost.

Through their work, Borough Mayor and Council Members make sure that Glassboro continues to be a great place to live, work and play, and continues to grow as a New Jersey destination.

Government — Welcome to the Official Website of the Borough of Glassboro

8.    After all, a governmental entity can act only through its personnel.

9.    The relevant Borough personnel are defendants, Mayor, John E. Wallace, III, Police Chief Ryan Knight, and John Does, 1-100 (a fictitious name for all past Mayors, Police Chiefs and all any police officer who enforced noise ordinance§354-22 and §327-3.

## CLASS ALLEGATIONS

10.    The Glassboro Ordinance §354-22, "Creation of loud and unreasonable noise" has been in existence and enforced by the defendants since at least July 24, 1979, when it was amended by Ordinance No. 79-12.

11.    The Borough of Glassboro's Ordinance §354-22, Creation of Loud and Unreasonable Noise, states, in full, that

A.
The making, creation or permitting of any unreasonably loud, disturbing and unnecessary noise in the Borough of Glassboro is hereby prohibited.
B.
The making, creating or permitting of any loud and unnecessary noise of such character, intensity and duration as to be detrimental to the life,

4

health and welfare of any individual or which, either steadily or intermittently, annoys, disturbs, injures or endangers the comfort, repose, peace or safety of any individual is hereby prohibited.

C.

An owner, landlord or tenant, as hereafter defined, shall be guilty of permitting the conduct proscribed by Subsections A and B above if he assists, aids, abets or suffers such conduct by others upon his premises, either by overt act, by failure to act or by lack of supervision and control over others upon his premises.

D.

Definitions. For purposes of this section, the following definitions shall apply:

LANDLORD

Any person or persons who own or purport to own any building, structure or complex of buildings or structures in which there is rented or offered for rent housing space for living or dwelling purposes under either a written or oral lease.

OWNER

The person or persons who own or purport to own any building, structure or complex of buildings or structures.

TENANT

Any person or persons who occupy or have the right to occupy any building, structure or complex of buildings or structures under either a written or oral lease.

E.

Violations and penalties. Any person violating any of the provisions of this section shall, upon conviction, be punished by one or more of the following, in the discretion of the Court:
[Added 8-23-2011 by Ord. No. 11-35; amended 6-26-2018 by Ord. No. 18-30]

(1)

A mandatory fine of not less than $200 and not more than $2,000;

(2)

Imprisonment not to exceed 90 days;

5

(3)

A period of community service not to exceed 90 days.

Editor's Note: See also Ch. 327, Noise.
Amended 7-24-1979 by Ord. No. 79-12

12.    Attached hereto as **Exhibit "A"** is a complete copy of the Borough of Glassboro's Ordinance §354-22.

13.    In addition, §327-3 States, in full, that

A.

Personal or commercial music amplification or reproduction equipment or other machine or device for the production or reproduction of sound shall not be operated in such a manner that it is plainly audible at a distance of 50 feet in any direction from the operator between the hours of 8:00 a.m. and 10:00 p.m. Between the hours of 10:00 p.m. and 8:00 a.m., sound from such equipment shall not be plainly audible at a distance of 25 feet in any direction from the operator.

B.

Self-contained, portable, hand-held music or sound amplification or reproduction equipment shall not be operated on a public space or public right-of-way in such a manner as to be plainly audible at a distance of 50 feet in any direction from the operator between the hours of 8:00 a.m. and 10:00 p.m. Between the hours of 10:00 p.m. and 8:00 a.m., sound from such equipment shall not be plainly audible by any person other than the operator.

Amended 5-22-2001 by Ord. No. 01-27; 5-28-2002 by Ord. No. 02-10
327-4

No person shall create any unreasonably loud disturbance or unnecessary noise of such character, intensity or duration as to disturb the peace, quiet and comfort of the neighboring residents, or to the annoyance or inconvenience of travelers on the streets or persons in

6

neighboring premises. The creation of any unreasonably loud, disturbing and unnecessary noise in the Borough is hereby prohibited. There is further prohibited any noise of such character, intensity or duration as is detrimental to the life or health of any individual.

14. Attached hereto as **Exhibit "B"** is a complete copy of the Borough of Glassboro's Ordinance §327-3.

15. By comparison to Exhibits **"A" and "B"**, the NJDEP Model Local Noise Ordinance, which is extensive, is attached as **Exhibit "C"**.

16. The defendant, Borough of Glassboro's Noise Control Ordinance, §354-22, and §327-3 were never approved by the NJDEP. This is a violation of the Noise Control Act, N.J.S.A. 13:1G-21.

17. Since September 30, 1976, or at the latest, July 24, 1979, the defendants have been aware that Ordinance §354-22 and §327-3 are not in compliance with Noise Control Act, N.J.S.A. 13:1G-21.

18. The last time the Borough of Glassboro submitted its Noise Ordinance to the NJDEP for approval was on September 30, 1976, and it was "disapproved" as currently displayed on the NJDEP's website: https://www.nj.gov/dep/enforcement/noise-control.html

| Gloucester | Deptford | no record | Disapproved |
| Gloucester | Glassboro | September 30, 1976 | Disapproved |
| Gloucester | Logan | no record | Disapproved |
| Gloucester | Monroe | December 28, 1997 | Approved |
| Hudson | Bayonne | July 30, 1998 | Approved |

19. Despite the NJDEP having "disapproved" the ordinance, the defendants without legal authority and lacking good faith, knowingly, deliberately, willfully, and

7

wantonly issued Complaints to its residents for allegedly violating ordinance §354-22 and its counterpart §327-3.

20.    Each of the plaintiffs and the class members received a Complaint from the defendant, through its Police Department and led by its Chief, which alleged that the individual plaintiffs and the class members committed the offense of being loud and or making unreasonable noise in violation of Ordinance §354-22 and its counterpart §327-3.

21.    Each Complaint that defendants issued to the plaintiffs and the class members, were issued without the utilization of a sound level monitoring device as required by the NJDEP Model Local Noise Ordinance.

22.    During all times relevant hereto, the Borough of Glassboro did not own or utilize a device which can monitor sound levels as required by the NJDEP Model Local Noise Ordinance.

23.    Ordinance §354-22 and §327-3 do not identify a maximum permissible sound decibel / level as required by the NJDEP Model Local Noise Ordinance.

24.    Ordinance §354-22 22 and §327-3 do not identify an objective measurable sound level standard as required by the NJDEP Model Local Noise Ordinance.

25.    The defendants do not and have never has employed a Certified Notise Control Officer to operate a certified sound measuring device as required by the NJDEP Model Local Noise Ordinance.

26.    The defendants' standards for the level or duration of community noise that are contained in ordinance §354-22 and §327-3 **(see Exhibits "A" and "B")** are less

8

stringent than the NJDEP Model Local Noise Ordinance which is attached as **Exhibit "C".** This is a violation of the Noise Control Act, N.J.S.A. 13:1G-21.

27.   Unlike the NJDEP Model Local Noise Ordinance **(Exhibit "C")** which identifies objective standards and utilizes instruments to measure sound levels, Glassboro's ordinance §354-22 and its counterpart, §327-3. **(Exhibits "A" and "B")** prohibit noise which annoys "any individual". Specifically, §354-22, states, in relevant part that

A.

The making, creation or permitting of any unreasonably loud, disturbing and unnecessary noise in the Borough of Glassboro is hereby prohibited.

B.

The making, creating or permitting of any loud and unnecessary noise of such character, intensity and duration as to be detrimental to the life, health and welfare of any individual or which, either steadily or intermittently, annoys, disturbs, injures or endangers the comfort, repose, peace or safety of any individual is hereby prohibited.

**(Exhibit "A")**

28.   Ordinance §354-22 and its counterpart, §327-3, is so broad that it does not apply to a reasonable prudent person, rather it applies to the most sensitive of people.

29.   Ordinance §354-22 and its counterpart, §327-3, is so broad that it applies to anyone with a grudge against the property owner or occupier, such as the plaintiffs.

30.   Ordinance §354-22 and its counterpart, §327-3, is so broad that it applies to anyone who dislikes a certain genre or style of music, like rap, country, or heavy metal.

31.   Unlike NJDEP Model Local Noise Ordinance, Glassboro's ordinance §354-22 and its counterpart §327-3, operate without a fixed, objective standard to apply.

9

32. Unlike NJDEP Model Local Noise Ordinance, Glassboro's ordinance §354-22 and its counterpart §327-3, operate without adequate objective guidelines which allows for inconsistent and discriminatory enforcement.

33. Each of the plaintiffs and the class members received a Complaint from the defendant, Borough of Glassboro, through its Police Department who did not have the legal authority and probable cause to issue such Complaints which alleged that the plaintiffs and the class members committed the offense of being loud and or making unreasonable noise in violation of ordinance §354-22 and its counterpart, §327-1.

34. The issuance of such Noise Complaints by the police department for allegedly violation of ordinance §354-22 and its counterpart, §327-3, over a period of almost four decades without prior approval by the NJDEP rendered the acts of the police force ultra vires and thereby constitute willful misconduct.

35. Each plaintiff and class member were then prosecuted by the defendants without statutory authority, and subsequently convicted in the Glassboro Municipal Court for violating ordinance §354-22 and its counterpart, §327-3. They were then sentenced and penalized by the Municipality without statutory authority, in accordance with the unlawful ordinance §354-22E, which provides:

E. Violations and penalties. Any person violating any of the provisions of this section shall, upon conviction, be punished by one or more of the following, in the discretion of the court: [Added 8-23-2011 by Ord. No. 11-35; amended 6-26-2018 by Ord. No. 18-30)

(1) A mandatory fine of not less than $200 and not more than $2,000;

(2) Imprisonment not to exceed 90 days;

(3) A period of community service not to exceed 90 days.

36.    It is the policy of the Borough of Glassboro through its Mayor and Council to sentence every person convicted of violating ordinance §354-22 and or its counterpart, §327-3, to 20 hours of Community Service in addition to the mandatory minimum fine of not less than $200.00, plus court costs. The aforesaid acts by these individuals, pursuant to the Borough's policy were ministerial, and constitute willful misconduct.

37.    During all times relevant hereto the Municipal Judge and prosecutor acted beyond the scope of their professional and ethical authority since they never had the legal authority to prosecute, try, convict, and sentenced each plaintiff and class member under ordinance §354-22 and its counterpart, §327-3, thereby rendering their actions ultra vires, and this constitutes willful misconduct, all under the watchful eye of the defendants, the Borough of Glassboro, its Mayor, John E. Wallace, III, and Police Chief Ryan Knight, as well as John Does, 1-100 (a fictitious name for all past Mayors, Police Chiefs and all any police officer who enforced noise ordinance§354-22 and §327-3)

38.    In fact, Municipal Judge John J. Armano, Esq. has said, on the Record, that he has dealt with the NJDEP pre-emption issue on prior occasions, yet he continues to convict and sentence the plaintiffs and class members under ordinance §354-22 and or its counterpart, §327-3, which he knew or should have known was preempted by state law, thereby rendering the ordinance unlawful and unenforceable, and making his actions ultra vires, malicious, and with actual malice.

39.    The financial penalties and community service imposed on each of the plaintiffs and class members was illegal and ultra vires and thereby violates the Excessive Fines Clause Protections of the Eighth Amendment and constituted cruel and unusual

11

punishment in violation of the United States Constitution for each minute the plaintiffs and class members spent in community service.

40.    The plaintiffs and class members' payment of the fines and costs to the Borough of Glassboro which were imposed for violating ordinance §354-22 and its counterpart, §327-3, was not voluntary, and neither was their community service. The plaintiffs and class members reported for community service and paid these fines and costs under duress and threat of a bench warrant being issued for their arrest, a suspended license, late fees and penalties, and or contempt of court.

41.    The plaintiffs and class members had no choice but to serve the sentences unless they wanted to be threatened with further legal action.

42.    Municipalities, like the Borough of Glassboro, derive their power from the State and thus they can exercise only such power as they are granted by the Legislature and the State Constitution. Varsalona v. Breen Capital Services Corp., 180 N.J. 605, 624 (2004).

43.    The defendant, Borough of Glassboro, uses a governing form with a with a weak mayor and legislative council structure, therefore its enabling legislation is derived from The Home Rule Act, N.J.S.A. 40:42-1 et seq. which gives municipalities the power to adopt ordinances for the preservation of public health, safety, and welfare, provided the subject matter is not preempted by state law.

44.    The New Jersey Constitution – Article IV, Section VII, Paragraph 11, permits municipalities to adopt local laws not inconsistent with general state laws— and this forms the constitutional basis for Home Rule.

12

45.     Since the enactment of Ordinance §354-22 in 1976, as amended in 1979, and followed by §327-3, the defendants lacked the legal authority to penalize anyone for violating this ordinance, because this ordinance was preempted by state law.   More specifically N.J.S.A. 40:49-5 states that:

> The governing body may prescribe penalties for the violation of ordinances it may have authority to pass, by one or more of the following: imprisonment in the county jail or in any place provided by the municipality for the detention of prisoners, for any term not exceeding 90 days; or by a fine not exceeding $2,000; or by a period of community service not exceeding 90 days.[emphasis added]

46.     Were a governing body of a municipality lacks the authority to enact an ordinance, such as Ordinance §354-22 and §327-3, because it has not complied with the Noise Control Act, N.J.S.A. 13:1G-21, it also lacks the authority to prosecute and punish anyone accused of violating the ordinance.

47.     The defendants' actions as outlined above have deprived the plaintiffs and the class members of certain fundamental rights, such as the clearly established right to enjoy one's property without arbitrary interference by the local government, a right that is enshrined in the NJ Constitution Article 1, part 1.

48.     The defendant's issuance of a complaint, followed by its/their prosecution of the complaint, conviction, and sentence without proper legal authority, such as compliance with the Noise Control Act, N.J.S.A. 13:1G-21, as otherwise outlined above and being ultra vires, deprived the plaintiffs and the class members of the clearly established rights under the 14th Amendment when they deprived the plaintiffs and the class members of their

13

liberty without due process of law during each minute the plaintiffs and class members spent in Community Service.

49.     The defendant's issuance of a complaint, followed by its/their prosecution of the complaint, conviction, and sentence without proper legal authority, such as compliance with the Noise Control Act, N.J.S.A. 13:1G-21, violates the clearly established right of the Due Process Clause of the Fourteenth Amendment, which requires that government actions affecting life, liberty, or property be conducted in accordance with established legal procedures. In State v. Rosenman, 183 N.J. Super. 137 (1982), the court emphasized that fines must be collected and distributed in accordance with legislative authority, and the Due Process Clause does not protect a governmental entity's interest in fines unless the legislature has properly authorized their collection and distribution.

50.     The defendant's issuance of a complaint, followed by its/their prosecution of the complaint, conviction, and sentence without first complying with the Noise Control Act, N.J.S.A. 13:1G-21, violates the clearly established right of the Excessive Fines Clause Protections of the Eighth Amendment, applicable to the states through the Fourteenth Amendment, which limits the government's power to impose fines as punishment for offenses. A fine imposed without authority may be considered arbitrary and excessive, violating this constitutional protection.

51.     In State v. Anderson, 463 N.J. Super. 168 (2020), the court explained that the Excessive Fines Clause is intended to prevent the government from abusing its power to punish by extracting payments as punishment for an offense.). Similarly, the court noted that the Excessive Fines Clause applies beyond criminal proceedings and limits the

14

government's prosecutorial power to impose fines arbitrarily or excessively. Davanne Realty v. Edison Tp., 408 N.J. Super. 16 (2009)

52. The imposition of a fine and or community service without proper legal authority, such as compliance with the Noise Control Act, N.J.S.A. 13:1G-21, constitutes a violation of the clearly established right to be free from Excessive Fines and cruel and unusual punishment in violation of the Eighth Amendment and state constitutional provisions.

53. The above ministerial acts of the defendants constitute an action taken in their official capacities, under the Color of Law and pursuant to local policy.

54. The individuals acting under color of law and pursuant to local policy were employees and agents of the Borough of Glassboro, including its Mayor, John E. Wallace, III; and the Borough of Glassboro Police Chief, Ryan Knight; as well as John Does 1–100, (a fictitious name for all past Mayors, Police Chiefs and all any police officer who enforced noise ordinance§354-22 and §327-3). Acting jointly and in concert, these defendants wrongfully issued complaints to the plaintiffs and class members and subsequently prosecuted and sentenced each under ordinance §354-22 and §327-3, which was unlawful, void, and ultra vires due to its failure to comply with the Noise Control Act, N.J.S.A. 13:1G-21. These facts establish a direct causal connection between the actions of these individuals and the alleged violations of the rights of the plaintiffs and class members.

55. The violations of the rights of the plaintiffs and class members arose from an official policy, custom, or practice that rendered the defendants' acts ministerial in nature. This policy originated with the Mayor and Borough Council through their adoption, by

15

resolution, of ordinance §354-22 and §327-3, which was preempted for failure to comply with the Noise Control Act, N.J.S.A. 13:1G-21. Thereafter, for nearly fifty years, the Borough of Glassboro, acting through its Police Department, Municipal Prosecutor, and Municipal Court Judge, engaged in a widespread, permanent, and well-settled custom and practice of enforcing §354-22 and §327-3. Acting jointly and in concert, these officials wrongfully, and with malice or willful intent, charged, prosecuted, and sentenced each plaintiff and class member under the preempted, void, and ultra vires ordinance §354-22 and §327-3.

56. The violations of these clearly established rights were further evidenced through the actions of final policymakers, including the Borough Council and Mayor, by their adoption and resolution of ordinance §354-22 and §327-3, which failed to comply with the Noise Control Act, N.J.S.A. 13:1G-21. These violations were compounded by nearly five decades of mandated and routine enforcement by Police Chief Ryan Knight, Municipal Judge John J. Armano, Esq., Municipal Prosecutor Amanda Mazzoni, Esq., and John Does 1-100 (a fictitious name for all past Mayors, Police Chiefs and all any police officer who enforced noise ordinance§354-22 and §327-3) Collectively, these individuals and entities enforced, prosecuted, and imposed sentences upon individuals alleged to have violated an ordinance that was invalid from its inception.

57. Each plaintiff has standing to bring this claim since each plaintiff was charged, convicted, and sentenced (harmed) in accordance with the defendant's enforcement of its illegal ordinance §354-22 and or its counterpart §327-13.

16

58. This action is brought, and may properly be maintained, as a class action under Rule 4:32. The proposed class satisfies the numerosity, typicality, adequacy, predominance, superiority, and all other requirements of the rule.

59. The proposed class consists of well over 100 people.

60. The class is so numerous that the joinder of all members is impracticable, and it is impracticable to bring all such persons before this Court.

61. The injuries and damages to the plaintiffs and class members present common questions of law and fact including, but not limited to:

(i). Whether the defendant's ordinance §354-22 and its counterpart, §327-3, are preempted by state law and, in particular, the Noise Control Act, N.J.S.A. 13:1G-21.

(ii). Whether the defendant's ordinance §354-22 and its counterpart, §327-3, are preempted by state law and, in particular N.J.S.A. 40:49-5.

(iii). Whether the defendant's ordinance §354-22 and its counterpart, §327-3, are Ultra Vires.

(iv). Whether the defendant's ordinance §354-22 and its counterpart, §327-3, as enacted and enforced, violate the United States Constitution.

(v). Whether the defendant's ordinance §354-22 and its counterpart, §327-3, as enacted and enforced, violates the New Jersey Constitution.

(vi). Whether the defendant's ordinance §354-22 and its counterpart, §327-3, as enacted and enforced, are a violation of the Civil Rights Act of 1983.

(vii). Whether the defendant's ordinance §354-22 and its counterpart, §327-3, as enacted and enforced, are a violation of the New Jersey Civil Rights Act.

(viii). Whether the defendant's ordinance §354-22 and its counterpart, §327-3, as enacted and enforced, constitutes willful and wanton conduct.

(ix). Whether the defendant's ordinance §354-22 and its counterpart, §327-3, as enacted and enforced, entitles the class members to Restitution under N.J.S.A. 2B:12-32.

17

(x).     Whether the defendant's ordinance §354-22 and its counterpart, §327-3, as enacted and enforced, caused any harm to the plaintiff and class members.

(xi).    Whether the claims and injuries of the representative plaintiffs are typical of the claims and injuries of the entire class, and the claims, and injuries of each class member are typical of those of the entire class.

62.     The defendant(s) has/have engaged in the same conduct with respect to all of the class members.

63.     The named plaintiffs' claims, defenses, and damages are typical of the claims, defenses, and damages of the class members.

64.     The named plaintiffs will fully and adequately protect and represent the interests of the class members.

65.     The identity of the class members is available from defendants' records and will be determined in discovery.

66.     The prosecution of separate actions by each class member would create a substantial risk of inconsistent or varying adjudications for each individual class member that would establish incompatible standards of conduct for the Plaintiffs.

67.     The prosecution of separate actions would also create a substantial risk of adjudication with respect to individual members of the class, which, as a practical matter, would be dispositive of the interests of other members, not parties to the adjudication, thereby substantially impairing and impeding their ability to protect those interests.

68.     The maintenance of this suit as a class action is the superior means of disposing of the common questions that predominate herein.

18

69.    Excluded from the class set forth above are:  (a) Defendants, any entity or division in which Defendants have a controlling interest, and their legal representatives, officers, directors, assigns, and successors; (b) the Municipal Judge to whom these cases were assigned and the Judge's staff and their immediate family members; (c) the municipal prosecutor or their immediate family members; (d); and (e) any individual who otherwise would be included under one or more of the class descriptions above but who has filed an individual lawsuit seeking the same relief from the same parties.

## COUNT ONE
### (Declaratory Judgment)

70.    Plaintiffs, on their own behalf and for all others similarly situated, re-alleges and incorporates herein all previous paragraphs of this Complaint.

71.    Municipalities derive their power from the State and thus they can exercise only such power as they are granted by the Legislature and the State Constitution. Varsalona v. Breen Capital Services Corp., 180 N.J. 605, 624 (2004).

72.    The defendant, Borough of Glassboro, uses a governing form with a with a weak mayor and legislative council structure, therefore its enabling legislation is derived from The Home Rule Act, N.J.S.A. 40:42-1 et seq. which gives municipalities the power to adopt ordinances for the preservation of public health, safety, and welfare, provided the subject matter is not preempted by state law.

73.    The New Jersey Constitution – Article IV, Section VII, Paragraph 11, permits municipalities to adopt local laws not inconsistent with general state laws—and this forms the constitutional basis for Home Rule.

19

74.    Were a governing body of a municipality lacks the authority to enact an ordinance, such as Ordinance §354-22 and its counterpart and §327-3, because it has not complied with the Noise Control Act, N.J.S.A. 13:1G-21, it also lacks the authority to prosecute and punish anyone accused of violating the ordinance.

75.    Since the enactment of Ordinance §354-22 in 1976, as amended in 1979, the defendants lacked the legal authority to penalize anyone for violating this ordinance. More specifically N.J.S.A. 40:49-5 states that:

> The governing body may prescribe penalties for the violation of ordinances it may have authority to pass, by one or more of the following: imprisonment in the county jail or in any place provided by the municipality for the detention of prisoners, for any term not exceeding 90 days; or by a fine not exceeding $2,000; or by a period of community service not exceeding 90 days.[emphasis added]

76.    Even though the defendants do not have the legal authority to prosecute anyone for allegedly violating Ordinance §354-22 and its counterpart, §327-3, the Borough of Glassboro, through its police force, municipal Judges and prosecutors have prosecuted the plaintiffs and class members over nearly 4 decades.

77.    New Jersey has enacted the Declaratory Judgment Act, N.J.S.A. 2A:16-50 et seq. for purposes of declaring parties' rights in this precise circumstance.

78.    Plaintiffs seek the Court's declaration that the defendant's Ordinance §354-22 and its counterpart, §327-3, are preempted by state law and in particular Noise Control Act, N.J.S.A. 13:1G-21, and can no longer be enforced.

79.    Plaintiffs seek the Court's declaration that the defendant's Ordinance §354-22 and its counterpart, §327-3, violate the Noise Control Act, N.J.S.A. 13:1G-21 because

20

the defendant's standards for the level or duration of community noise that are contained in Ordinance §354-22 and §327-3 (Exhibits "A" and "B") are less stringent than the NJDEP Model Local Noise Ordinance ("Exhibit "C"), and therefore can no longer be enforced.

80.    Plaintiffs seek the Court's declaration that the defendant's Ordinance §354-22 and §327-3, violate the Noise Control Act, N.J.S.A. 13:1G-21 because the defendant's Ordinance was never approved by the NJDEP as required by the Act, and therefore can no longer be enforced.

81.    Plaintiffs seek the Court's declaration that the defendant lacks the legal authority to enforce Ordinance §354-22 and §327-3, and penalize anyone for violating this ordinance pursuant to N.J.S.A. 40:49-5.

82.    Plaintiffs seek the Court's declaration that the defendant, Borough of Glassboro, did not have the legal authority to adopt Ordinance §354-22 and §327-3 because Ordinance §354-22 and §327-3, were never approved by the NJDEP as required by the Noise Control Act, and or because the defendant's Ordinance is less stringent than the NJDEP Model Local Noise Ordinance., thus making the defendant's ordinance Ultra Vires.

83.    A justiciable controversy exists between the defendants and the plaintiffs because. The defendants continue to enforce their ordinance by prosecuting and sentencing people who are alleged to have violated the ordinance. This effects the ongoing rights of the plaintiffs and class members.

21

84.    The controversy between the defendants and the plaintiffs is ripe for judicial review. The plaintiffs and class members are subject to threat of immediate future enforcement.

85.    A determination by the Court of the rights of the plaintiffs, the class members, and the defendants as they relate to Ordinance §354-22 and §327-3, is to terminate the controversy and remove any uncertainty with respect to the validity, and applicability, and enforceability of the ordinance in question.

**WHEREFORE,** pursuant to the Declaratory Judgment Act, N.J.S.A. 2A:16-50 et seq. the plaintiffs pray for judgment by this Court that:

(a).    Ordinance §354-22 and its counterpart §327-3, are preempted by state law and in particular Noise Control Act, N.J.S.A. 13:1G-21.

(b).    Ordinance §354-22 and its counterpart §327-3, violate the Noise Control Act, N.J.S.A. 13:1G-21 because the ordinance's standards for the level or duration of community are less stringent than the NJDEP Model Local Noise Ordinance.

(c).    Ordinance §354-22 and its counterpart §327-3 violate the Noise Control Act, N.J.S.A. 13:1G-21 because the Ordinance was never approved by the NJDEP.

(d).    The defendants, Borough of Glassboro, its Mayor and Council, did not have the legal authority to adopt Ordinance §354-22 and its counterpart §327-3, thus making the ordinance Ultra Vires.

(e).    The defendants lack the legal authority to enforce, prosecute, and penalize anyone for violating Ordinance §354-22 and its counterpart §327-3 pursuant to N.J.S.A. 40:49-5.

22

(f)   The defendant, Borough of Glassboro, is liable to the Plaintiffs and class members for attorney's costs of suit, and such other relief as the Court deems equitable and just.

(g)   An Order be entered pursuant to N.J.S.A. 2B:12-23 compelling the defendant, Borough of Glassboro, to make restitution/refund to the plaintiffs and class members pursuant to N.J.S.A. 2B:12-32, and disgorge from the Borough of Glassboro all fines and costs collected from plaintiffs and the class members for allegedly violating §354-22 and its counterpart §327-3.

(h).   An Order be entered pursuant to N.J.S.A. 2B:12-23 that the defendant, Borough of Glassboro and any judicial or law enforcement agency or agency in the criminal justice system that maintains a written or automated record or file concerning the subject of the order shall purge that record or file of all information identifying any person arrested, charged or convicted of violating the ordinance;

(i)   An Order be entered enjoining the defendants from continuing to enforce Ordinance §354-22 and its counterpart §327-3 as written.

## COUNT TWO
### (Ultra Vires Acts in the Primary Sense)

86.   The plaintiffs repeat and re-allege each of the foregoing facts as though more fully set forth herein.

87.   Municipalities derive their power from the State and thus they can exercise only such power as they are granted by the Legislature and the State Constitution. Varsalona v. Breen Capital Services Corp., 180 N.J. 605, 624 (2004).

23

88.    The defendant, Borough of Glassboro, uses a governing form with a with a weak mayor and legislative council structure, therefore its enabling legislation is derived from The Home Rule Act, N.J.S.A. 40:42-1 et seq. which gives municipalities the power to adopt ordinances for the preservation of public health, safety, and welfare, provided the subject matter is not preempted by state law.

89.    The New Jersey Constitution – Article IV, Section VII, Paragraph 11, permits municipalities to adopt local laws not inconsistent with general state laws— and this forms the constitutional basis for Home Rule.

90.    N.J.A.C. 7:29-1.8, the pertinent regulation adopted pursuant to the Noise Control Act, provides

> (a) A governing body of a municipality or county or board of health may adopt a noise control ordinance in accordance with the Noise Control Act of 1971, at N.J.S.A. 13:1G–21, provided that the ordinance shall be more stringent than the Noise Control Act or the regulations promulgated pursuant thereto, must be otherwise consistent with the Statewide scheme of noise control, and meets with the written approval of the Department.

> (b) Enforcement of a noise control ordinance is limited to the authorized enforcement agency as specified in the ordinance and enforcement actions shall be conducted in accordance with N.J.A.C. 7:29–1.7, Enforcement.

91.    Furthermore, N.J.A.C. 7:29–2.3 states that, "[f]or purposes of measuring noise in accordance with applicable provisions of the rules of the Department, sound levels shall be determined by a qualified investigator using instruments and procedures prescribed by the Department." In the case at bar, the Borough of Glassboro never set any measurable

24

GLO-L-001154-25   08/27/2025 4:26:18 PM   Pg 25 of 68   Trans ID: LCV20252353064

sound level standards and never used any instruments and procedures prescribed by the NJDEP.

92.    Were a governing body of a municipality lacks the authority to enact an ordinance, such as §354-22 and its counterpart §327-3, because it has not complied with enabling legislation such as N.J.A.C. 7:29-1.8, N.J.A.C. 7:29-1.8, and N.J.S.A. 13:1G-21, it also lacks the authority to prosecute and punish anyone accused of violating the ordinance.

93.    Since the enactment of Ordinance §354-22 in 1976, as amended in 1979, the defendants lacked the legal authority to penalize anyone for violating this ordinance and its counterpart §327-3. More specifically N.J.S.A. 40:49-5 states that:

> The governing body may prescribe penalties for the violation of ordinances it may have authority to pass, by one or more of the following: imprisonment in the county jail or in any place provided by the municipality for the detention of prisoners, for any term not exceeding 90 days; or by a fine not exceeding $2,000; or by a period of community service not exceeding 90 days.[emphasis added]

94.    Since the defendant, Borough of Glassboro, never had the legal authority to adopt ordinance §354-22 and its counterpart §327-3 in its present form, the Borough of Glassboro, through its police force, municipal Judges, and prosecutors never possessed the legal authority to prosecute anyone for allegedly violating §354-22 and its counterpart §327-3, but despite this lack of authority, the Borough of Glassboro, through its police force, municipal Judges, and prosecutors, have prosecuted the plaintiffs and class members for over nearly four decades.

25

95.     Ordinance §354-22 and its counterpart §327-3 are preempted by state law and in particular Noise Control Act, N.J.S.A. 13:1G-21 which says:

> Nothing in this act or in any code, rules, regulations or orders promulgated pursuant thereto shall preclude the right of any governing body of a municipality or county board of health, **subject to the approval of the department**, to adopt ordinances, resolutions or regulations which establish specific standards for the level or duration of community noise *more stringent than this act* or any code, rules or *regulations promulgated pursuant thereto*.

(emphasis added).

96.     The Borough of Glassboro's ordinance §354-22 and its counterpart §327-3 violates the Noise Control Act, N.J.S.A 13:1G-21 because the ordinance's standards for the level or duration of community noise are less stringent than the NJDEP Model Local Noise Ordinance.

97.     The Borough of Glassboro's ordinance §354-22 and its counterpart §327-3 violates the Noise Control Act, N.J.S.A. 13:1G-21 because the ordinance was never approved by the NJDEP as required by the Act.

98.     Plaintiffs seek the Court's declaration that the defendant's lack the legal authority to enforce ordinance §354-22 and its counterpart §327-3 and then penalize anyone for violating this ordinance pursuant to N.J.S.A. 40:49-5.

99.     Plaintiffs seek the Court's declaration that the defendant, Borough of Glassboro, did not have the legal authority to adopt ordinance §354-22 and its counterpart §327-3, thus making the ordinance Ultra Vires.

26

100. The defendants' enforcement of ordinance §354-22 and its counterpart §327-3 directly conflicts with the express language of the Noise Control Act because Glassboro adopted a local noise control ordinance that is less stringent than the NJDEP Model Local Noise and without the approval of the NJDEP. N.J.A.C. 7:29-1.2(a).

101. The Noise Control Act of 1971 N.J.S.A. 13:1G-21 says:

> Nothing in this act or in any code, rules, regulations or orders promulgated pursuant thereto shall preclude the right of any governing body of a municipality or county board of health, **subject to the approval of the department**, to adopt ordinances, resolutions or regulations which establish specific standards for the level or duration of community noise *more stringent than this act* or any code, rules *or regulations promulgated pursuant thereto*.

(emphasis added).

102. N.J.A.C. 7:29-1.8, the pertinent regulation adopted pursuant to the Noise Control Act, provides

> (a) A governing body of a municipality or county or board of health may adopt a noise control ordinance in accordance with the Noise Control Act of 1971, at N.J.S.A. 13:1G–21, provided that the ordinance shall be more stringent than the Noise Control Act or the regulations promulgated pursuant thereto, must be otherwise consistent with the Statewide scheme of noise control, and meets with the written approval of the Department.
>
> (b) Enforcement of a noise control ordinance is limited to the authorized enforcement agency as specified in the ordinance and enforcement actions shall be conducted in accordance with N.J.A.C. 7:29–1.7, Enforcement.

103. In addition, N.J.A.C. 7:29-2.3 states that, "[f]or purposes of measuring noise in accordance with applicable provisions of the rules of the Department, sound levels shall

27

be determined by a qualified investigator using instruments and procedures prescribed by the Department." In the case at bar, the Borough of Glassboro never set any measurable sound level standards and never used any instruments and procedures prescribed by the NJDEP.

104. The actions of the defendants as outlined above were and are utterly beyond the jurisdiction of the defendants and the Municipal Court.

105. The acts of the defendants, such as their prosecution of the plaintiffs and class members, under ordinance§354-22 and its counterpart §327-3, are void and cannot be ratified or validated under any circumstances.

106. The above ministerial acts of the defendants constitute an action taken in their official capacities, under the Color of Law and pursuant to local policy, although ultra vires.

107. The individuals acting under color of law and pursuant to local policy, although ultra vires, were employees and agents of the Borough of Glassboro including its Mayor, John E. Wallace, III; all Borough Council members who voted to adopt the resolution approving the subject ordinance; the Borough of Glassboro Police Chief, Ryan Knight; the Borough's Municipal Judge, John J. Armano, Esq.; and the Municipal Prosecutor, Amanda Mazzoni, Esq. These individuals also include John Does 1–100, a fictitious designation for all past Mayors, Council Members, Police Chiefs, and all past and present police officers who issued complaints for noise ordinance violations, as well as all past Municipal Judges and Prosecutors who prosecuted and sentenced class members under the ordinance). Acting jointly and in concert, these defendants wrongfully issued

28

complaints to the plaintiffs and class members and subsequently prosecuted and sentenced each under ordinance §354-22 and §327-3, which was unlawful, void, and ultra vires due to its failure to comply with the Noise Control Act, N.J.S.A. 13:1G-21. These facts establish a direct causal connection between the actions of these individuals and the alleged violations of the rights of the plaintiffs and class members.

108.    The violations of the rights of the plaintiffs and class members arose from an official policy, custom, or practice that rendered the defendants' acts ministerial in nature. This policy originated with the Mayor and Borough Council through their adoption, by resolution, of ordinance §354-22 and §327-3, which was preempted for failure to comply with the Noise Control Act, N.J.S.A. 13:1G-21.

109.    Thereafter, for nearly fifty years, the Borough of Glassboro, acting through its Police Department, Municipal Prosecutor, and Municipal Court Judge, engaged in a widespread, permanent, and well-settled custom and practice of enforcing §354-22 and its counterpart §327-3. Acting jointly and in concert, these officials wrongfully, and with malice or willful intent, charged, prosecuted, and sentenced each plaintiff and class member under the preempted, void, and ultra vires ordinance §354-22 and §327-3.

110.    The violations of these clearly established rights were further evidenced through the actions of final policymakers, including the Borough Council and Mayor, by their adoption and resolution of ordinance §354-22 and §327-3, which failed to comply with the Noise Control Act, N.J.S.A. 13:1G-21.

111.    These violations were compounded by nearly five decades of mandated and routine enforcement by Police Chief Ryan Knight, Municipal Judge John J. Armano, Esq.,

29

Municipal Prosecutor Amanda Mazzoni, Esq., and John Does 1-100 (a fictitious designation for all past Mayors, Council Members, Police Chiefs, and all past and present police officers who issued complaints for noise ordinance violations, as well as all past Municipal Judges and Prosecutors who prosecuted and sentenced class members under said ordinance). Collectively, these individuals and entities enforced, prosecuted, and imposed sentences upon individuals alleged to have violated an ordinance that was invalid from its inception.

112.   The defendant, Borough of Glassboro, its police force, Municipal Prosecutor, and Municipal Judge have acted ultra vires in the primary sense when they undertake prosecutorial action, starting with the issuance of a Complaint for which they have no legal authority or capacity under its legislative grant.

113.   The aforesaid acts by these individuals, pursuant to Borough policy, were ministerial and constitute willful misconduct.

114.   During all times relevant hereto the Municipal Judge and prosecutor acted beyond the scope of their professional and ethical authority since they never had the legal authority to prosecute, try, convict, and sentenced each plaintiff and class member under ordinance §354-22 and its counterpart, §327-3, thereby rendering their actions ultra vires, and this constitutes willful misconduct.

115.   This type of ultra vires act is entirely outside the scope of the defendants' powers and is therefore null and void from the outset.

30

116. As a direct and proximate result of the defendants' ultra vires acts and omissions, the plaintiffs and class members have been harmed and will continue to be harmed.

**WHEREFORE,** plaintiffs pray for judgment by this Court that

(a).   The defendant did not have the legal authority to adopt Ordinance §354-22, and its counterpart §327-3 thus making the ordinance Ultra Vires.

(b).   Ordinance §354-22 1 and its counterpart §327-3 lack the legal authority to enforce and then penalize anyone for violating this ordinance pursuant to N.J.S.A. 40:49-5.

(c)   An Order be entered enjoining the defendants from enforcing Ordinance §354-22 and its counterpart §327-3.

(d)   An Order be entered pursuant to N.J.S.A. 2B:12-23 compelling the defendants to make restitution/refund to the plaintiffs and class members and disgorge from the defendants all fines and costs collected from plaintiffs and the class members for allegedly violating §354-22 and its counterpart §327-3.

(e).   An Order be entered pursuant to N.J.S.A. 2B:12-23 that the defendant municipality that enacted ordinance §354-22 and its counterpart §327-3 and any judicial or law enforcement agency or agency in the criminal justice system that maintains a written or automated record or file concerning the subject of the order shall purge that record or file of all information identifying any person arrested, charged or convicted of violating the ordinance.

31

(f).    The defendants are liable to the Plaintiffs for attorney's costs of suit, and such other relief as the Court deems equitable and just.

## COUNT THREE
### (Restitution pursuant to N.J.S.A. 2B:12-32)

117.    The plaintiffs repeat and re-allege each of the foregoing facts as though more fully set forth herein.

118.    Municipalities derive their power from the State and thus can exercise only such power as they are granted by the Legislature and the State Constitution. Varsalona v. Breen Capital Services Corp., 180 N.J. 605, 624 (2004).

119.    The defendant, Borough of Glassboro, uses a governing form with a with a weak mayor and legislative council structure, therefore its enabling legislation is derived from The Home Rule Act, N.J.S.A. 40:42-1 et seq. which gives municipalities the power to adopt ordinances for the preservation of public health, safety, and welfare, provided the subject matter is not preempted by state law.

120.    The New Jersey Constitution – Article IV, Section VII, Paragraph 11, permits municipalities to adopt local laws not inconsistent with general state laws— and this forms the constitutional basis for Home Rule.

121.    Since the enactment of ordinance §354-22 in 1976, as amended in 1979, the defendant lacked the legal authority to penalize anyone for violating this ordinance. More specifically N.J.S.A. 40:49-5 states that:

> The governing body may prescribe penalties for the violation of ordinances it may have authority to pass, by one or more of the following: imprisonment in the county jail or in any place

provided by the municipality for the detention of prisoners, for any term not exceeding 90 days; or by a fine not exceeding $2,000; or by a period of community service not exceeding 90 days.[emphasis added]

122.    The defendant's adopted ordinance §354-22 and its counterpart, §327-3, are inconsistent with general state law, such as the Noise Control Act, N.J.S.A. 13:1G-21, because the defendant's standards for the level or duration of community noise contained in Ordinance §354-22 and §327-3 (Exhibits "A" and "B") are less stringent than the NJDEP Model Local Noise Ordinance ("Exhibit "C"), and because Glassboro adopted its ordinance without the required approval of the NJDEP. This is a violation of N.J.A.C. 7:29-1.2(a).

123.    Were a governing body of a municipality, such as the defendants Mayor and Council, lack the authority to enact an ordinance, such as Ordinance §354-22 and its counterpart §327-3, it also lacks the authority to enforce the ordinance and punish anyone accused of violating the ordinance, therefore any acts taken by the defendants to prosecute the plaintiffs lacked good faith and was otherwise unconstitutional.

124.    The penalties imposed on each of the plaintiffs and class members for violating ordinance §354-22 and its counterpart, §327-3, were inconsistent with general state law, such as the Noise Control Act, N.J.S.A. 13:1G-2, and therefore imposed without legal authority, thereby constituting cruel and unusual punishment in violation of the United States Constitution.

125.    The defendant's actions as outlined above have deprived the plaintiff and the class members of certain fundamental rights, such as the clearly established right to enjoy

33

one's property without arbitrary interference by the local government, a right that is enshrined in the NJ Constitution Article 1, part 1.

126.    The defendant's actions as outlined above deprived the plaintiffs and the class members of the clearly established rights under the 14th Amendment when they deprived the plaintiffs and the class members of their liberty without due process of law during each minute the plaintiffs and class members spent in Community Service.

127.    The imposition of a fine without proper legal authority violates the clearly established right of the Due Process Clause of the Fourteenth Amendment, which requires that government actions affecting life, liberty, or property be conducted in accordance with established legal procedures. In State v. Rosenman, 183 N.J. Super. 137 (1982), the court emphasized that fines must be collected and distributed in accordance with legislative authority, and the Due Process Clause does not protect a governmental entity's interest in fines unless the legislature has properly authorized their collection and distribution.

128.    In the case at bar, the defendants do not and nor have they ever had the legal authority to collect and distribute fines under ordinance §354-22 and its counterpart §327-3.

129.    The imposition of a fine and or sentence to community service without proper legal authority violates the clearly established right of the Excessive Fines Clause and or the cruel and unusual punishment clause of the Eighth Amendment, applicable to the states through the Fourteenth Amendment, which limits the government's power to impose fines as punishment for offenses. A fine imposed without authority may be considered arbitrary and excessive, violating this constitutional protection.

34

130.    In State v. Anderson, 463 N.J. Super. 168 (2020), the court explained that the Excessive Fines Clause is intended to prevent the government from abusing its power to punish by extracting payments as punishment for an offense.). Similarly, the court noted that the Excessive Fines Clause applies beyond criminal proceedings and limits the government's prosecutorial power to impose fines arbitrarily or excessively. Davanne Realty v. Edison Tp., 408 N.J. Super. 16 (2009)

131.    The imposition of a fine without proper legal authority constitutes a violation of the clearly established right to be free from Cruel and Unusual Punishment in violation of the Eighth Amendment and state constitutional provisions.

132.    The above acts of the defendants, Borough of Glassboro, through the ministerial acts of its agents servants and employees such as Mayor, John E. Wallace, III, all council members who passed a Resolution approving the subject ordinance, Police Chief, Ryan Knight, Municipal Judge, John J. Armano, Esq., Municipal Prosecutor, Amanda Mazzoni, Esq., and John Does, 1-100 ( a fictitious name for all past Mayors, Council Members, Police Chiefs, and all past and present police officers who, through their ministerial acts, issued a Complaint for a noise ordinance violation as well as all past Municipal Judges and Prosecutors who prosecuted and sentenced the class members under said ordinance), constitute an action taken under the Color of Law and or in their official capacities.

133.    The aforesaid defendants, the Borough of Glassboro, through the ministerial acts of its agents, servants, and employees named herein, acting under Color of Law, together and in concert, wrongfully prosecuted and sentenced each plaintiff under the unlawful, void, and Ultra Vires ordinance §354-22 and its counterpart §327-3. This

35

constitutes a direct connection between these actors and the alleged violations of the plaintiffs' rights.

134.   These violations of the plaintiffs' rights were the result of an official policy, custom, or practice of the Borough of Glassboro through the ministerial acts of its agents, servants, and employees named herein, acting under Color of Law, which started with the Borough Council and Mayor through their adoption of the illegal ordinance §354-22 and its counterpart §327-3 followed by the widespread, permanent and well-settled policy, custom, and practice over almost 50 years by the Brough's Police Department, Municipal Prosecutor, and its Municipal Court Judge who, together and in concert, wrongfully prosecuted and sentenced each plaintiff under the unlawful, void, and Ultra Vires ordinance.

135.   These violations were further manifested through the acts of a final policymaker, such as the Borough Council and Mayor through their adoption and resolution of the illegal ordinance followed by the regular practice over almost 50 years by the Brough's Police Department, Municipal Court Administrator, Municipal Prosecutor, and the Municipal Court Judge who, together and in concert, wrongfully prosecuted and sentenced each plaintiff under the unlawful, void, and Ultra Vires ordinance.

136.   Each plaintiff has standing to bring this claim since each plaintiff was convicted and sentenced (harmed) in accordance with the defendant's enforcement of its illegal ordinance §354-22 and its counterpart, §327-3.

137.   The plaintiffs and class members' payment to the defendant of the fines and costs imposed for violating Ordinance §354-22 and its counterpart §327-3 was not

36

voluntary. The plaintiffs and class members paid these fines and costs under duress and threat of a bench warrant being issued for their arrest, a suspended license, late fees and penalties and or contempt of court.

138.    The plaintiffs and class members had no choice but to pay the imposed fines and costs unless they wanted to be threatened with further legal action.

139.    As a direct proximate result of the defendant's enforcement of its ultra vires ordinance, inclusive of its assessment of fines, costs, and Community Service, the plaintiffs and class members were harmed and deprived of their personal property and liberty.

**WHEREFORE,** plaintiffs pray for judgment by this Court that

(a).    The defendant did not have the legal authority to adopt Ordinance §354-22 and its counterpart §327-3, thus making the ordinance Ultra Vires.

(b).    The defendant's Ordinance §354-22 and its counterpart §327-3 lack the legal authority to penalize anyone for violating this ordinance pursuant to N.J.S.A. 40:49-5.

(c)    An Order be entered enjoining the Borough of Glassboro from enforcing Ordinance §354-22 and its counterpart §327-3.

(d)    An Order be entered pursuant to N.J.S.A. 2B:12-23 compelling the defendant to make restitution/refund to the plaintiffs and class members, all fines and costs collected from plaintiffs and the class members for allegedly violating §354-22 and its counterpart §327-3.

(e).    An Order be entered pursuant to N.J.S.A. 2B:12-23 that the defendant municipality that enacted ordinance §354-22 and its counterpart §327-3 and any judicial or law enforcement agency or agency in the criminal justice system that maintains a written

37

or automated record or file concerning the subject of the order shall purge that record or file of all information identifying any person arrested, charged or convicted of violating the ordinance.

(f).    The defendant is liable to the Plaintiffs for attorney's costs of suit, and such other relief as the Court deems equitable and just.

## COUNT FOUR
### (NJ Civil Rights Act, N.J.S.A. 10:6-2)

140    The plaintiffs repeat and re-allege each of the foregoing facts as though more fully set forth herein.

141.    The defendants, through their acts and omissions against the plaintiffs and class members as identified above, violated a protected right, including clearly established constitutional and statutory rights.

142.    The ministerial acts undertaken by the defendants, individually and in concert, were taken under Color of Law and or in their official or individual capacities.

143.    The municipal actors include the Borough of Glassboro through its Mayor, John E. Wallace, III, all council members who passed a Resolution approving the subject ordinance, Police Chief, Ryan Knight, Municipal Judge, John J. Armano, Esq., Municipal Prosecutor, Amanda Mazzoni, Esq., and John Does, 1-100 ( a fictitious name for all past Mayors, Council Members, Police Chiefs, and all past and present police officers who issued a Complaint for a noise ordinance violation as well as all past Municipal Judges and Prosecutors who prosecuted and sentenced the class members under said ordinance).

38

144. These actors acted under Color of Law and or in their official / individual capacities and while exercising powers given to them. However, they did not act in an objectively reasonable manner.

145. It is sufficiently clear that a reasonable official would understand that their enforcement of an ultra vires ordinance violates the rights of the plaintiffs and the class.

146. The plaintiffs and class members were all harmed by these actors and deprived not only of the right to gather on their property to socialize, or listen to music, or enjoy their property without the municipality unjustifiably interfering with that right, but the defendants also deprived the plaintiffs and the class members of their Fourth, Eighth, and Fourteenth Amendment rights by having them charged, prosecuted, and sentenced without probable cause under an unlawful and ultra vires ordinance.

147. The plaintiffs and class members were all harmed by the defendants through their implementation of an official municipal policy such as Ordinance §354-22 and its counterpart §327-3.

148. Afterall, within the Borough of Glassboro

The Mayor and Council Members create, pass, and amend local laws, as well as approve Glassboro's budget every year.

The Borough Council serves as a link between the citizens of Glassboro and their municipal government. Council Members help constituents by connecting them to resources, services, and Borough departments. They serve as advocates for all Glassboro citizens. The Borough Council is the legislative body of the Borough of Glassboro. The council is made up of six Council Members that represent the entire Borough.

Mayor and Council Members establish and put in place **public policy** to meet the continuous and changing needs of

39

Glassboro. **They create these policies by initiating legal documents, such as ordinances and laws** [emphasis added]. Every year, they also review and approve the Borough's operating and capital budget. They track Borough services throughout the year to guarantee their efficiency and reasonable cost.

Through their work, Borough Mayor and Council Members make sure that Glassboro continues to be a great place to live, work and play, and continues to grow as a New Jersey destination.

Government — Welcome to the Official Website of the Borough of Glassboro

148.    It is the policy of the Borough of Glassboro, through its Judge, to sentence every person convicted of violating Ordinance §354-22 and its counterpart §327-3 to serve Community Service in addition to the mandatory fine of not less than $200.00, plus court costs.

149.    The penalties imposed on each of the plaintiffs and class members was illegal and ultra vires and thereby constitutes cruel and unusual punishment in violation of the United States Constitution.

150.    The plaintiffs and class members' payments to the defendant, Borough of Glassboro, of the fines and costs imposed for violating Ordinance §354-22 and its counterpart §327-3 were not voluntary. The plaintiffs and class members paid these fines and costs under duress and threat of a bench warrant being issued for their arrest, a suspended license, late fees and penalties and or contempt of court.

151.    The plaintiffs and class members had no choice but to pay fines and costs imposed upon them unless they wanted to be threatened with further legal action.

40

152.    Municipalities, like the Borough of Glassboro, derive their power from the State and thus can exercise only such power as they are granted by the Legislature and the State Constitution. Varsalona v. Breen Capital Services Corp., 180 N.J. 605, 624 (2004).

153.    The defendant, Borough of Glassboro, uses a governing form with a with a weak mayor and legislative council structure, therefore its enabling legislation is derived from The Home Rule Act, N.J.S.A. 40:42-1 et seq. which gives municipalities the power to adopt ordinances for the preservation of public health, safety, and welfare, provided the subject matter is not preempted by state law.

154.    The New Jersey Constitution – Article IV, Section VII, Paragraph 11, permits municipalities to adopt local laws not inconsistent with general state laws— and this forms the constitutional basis for Home Rule.

155.    Since the enactment of Ordinance §354-22 in 1976, as amended in 1979, the defendant lacked the legal authority to penalize anyone for violating this ordinance. More specifically N.J.S.A. 40:49-5 states that:

> The governing body may prescribe penalties for the violation of ordinances it may have authority to pass, by one or more of the following: imprisonment in the county jail or in any place provided by the municipality for the detention of prisoners, for any term not exceeding 90 days; or by a fine not exceeding $2,000; or by a period of community service not exceeding 90 days.[emphasis added]

156.    Were a governing body of a municipality lacks the authority to enact an ordinance, such as ordinance §354-22 and its counterpart §327-3, it also lacks the authority to punish anyone accused of violating the ordinance.

41

157. The defendant's actions as outlined above have deprived the plaintiff and the class members of certain fundamental rights, such as the clearly established right to enjoy one's property without arbitrary interference by the local government, a right that is enshrined in the NJ Constitution Article 1, part 1.

158. The defendant's actions as outlined above deprived the plaintiffs and the class members of the clearly established rights under the 14th Amendment when they deprived the plaintiffs and the class members of their liberty without due process of law during each minute the plaintiffs and class members spent in Community Service.

159. The imposition of a fine without proper legal authority violates the clearly established right of the Due Process Clause of the Fourteenth Amendment, which requires that government actions affecting life, liberty, or property be conducted in accordance with established legal procedures. In State v. Rosenman, 183 N.J. Super. 137 (1982), the court emphasized that fines must be collected and distributed in accordance with legislative authority, and the Due Process Clause does not protect a governmental entity's interest in fines unless the legislature has properly authorized their collection and distribution.

160 The imposition of a fine and or sentence to community service without proper legal authority violates the clearly established right of the Excessive Fines Clause and or the cruel and unusual punishment clause of the Eighth Amendment, applicable to the states through the Fourteenth Amendment, which limits the government's power to impose fines as punishment for offenses. A fine imposed without authority may be considered arbitrary and excessive, violating this constitutional protection.

42

161.   In State v. Anderson, 463 N.J. Super. 168 (2020), the court explained that the Excessive Fines Clause is intended to prevent the government from abusing its power to punish by extracting payments as punishment for an offense.). Similarly, the court noted that the Excessive Fines Clause applies beyond criminal proceedings and limits the government's prosecutorial power to impose fines arbitrarily or excessively. Davanne Realty v. Edison Tp., 408 N.J. Super. 16 (2009)

162.   The imposition of a fine without proper legal authority constitutes a violation of the clearly established right to be free from Cruel and Unusual Punishment in violation of the Eighth Amendment and state constitutional provisions.

163..   The above acts of the defendants, Borough of Glassboro, through the ministerial acts of its agents servants and employees such as Mayor, John E. Wallace, III, all council members who passed a Resolution approving the subject ordinance, Police Chief, Ryan Knight, Municipal Judge, John J. Armano, Esq., Municipal Prosecutor, Amanda Mazzoni, Esq., and John Does, 1-100 ( a fictitious name for all past Mayors, Council Members, Police Chiefs, and all past and present police officers who, through their ministerial acts, issued a Complaint for a noise ordinance violation as well as all past Municipal Judges and Prosecutors who prosecuted and sentenced the class members under said ordinance), constitute an action taken under the Color of Law and or in their official capacities.

164.   The aforesaid defendants, the Borough of Glassboro, through the ministerial acts of its agents, servants, and employees named herein, acting under Color of Law, together and in concert, wrongfully prosecuted and sentenced each plaintiff under the unlawful, void, and Ultra Vires ordinance §354-22 and its counterpart §327-3. This

43

constitutes a direct connection between these actors and the alleged violations of the plaintiffs' rights.

165.    These violations of the plaintiffs' rights were the result of an official policy, custom, or practice of the Borough of Glassboro through the ministerial acts of its agents, servants, and employees named herein, acting under Color of Law, which started with the Borough Council and Mayor through their adoption of the illegal ordinance §354-22 and its counterpart §327-3 followed by the widespread, permanent and well-settled policy, custom, and practice over almost 50 years by the Brough's Police Department, Municipal Prosecutor, and its Municipal Court Judge who, together and in concert, wrongfully prosecuted and sentenced each plaintiff under the unlawful, void, and Ultra Vires ordinance.

166.    These violations were further manifested through the acts of a final policymaker, such as the Borough Council and Mayor through their adoption and resolution of the illegal ordinance followed by the regular practice over almost 50 years by the Brough's Police Department, Municipal Court Administrator, Municipal Prosecutor, and the Municipal Court Judge who, together and in concert, wrongfully prosecuted and sentenced each plaintiff under the unlawful, void, and Ultra Vires ordinance.

167.    Each plaintiff has standing to bring this claim since each plaintiff was convicted and sentenced (harmed) in accordance with the defendant's enforcement of its illegal ordinance §354-22 and its counterpart, §327-3.

44

**WHEREFORE,** plaintiffs demand judgment against the defendants for compensatory damages, punitive damages, attorney's fees, interest, costs, and for any other such relief the court deems fair and just.

## COUNT FIVE
### (42 U.S.C 1983)
### Conspiracy to Violate Civil Rights

168.   The plaintiffs repeat and re-allege each of the foregoing facts as though more fully set forth herein.

169.   This Action is brought pursuant to 42 U.S.C. §1983 and in accordance with the Fourth, Eighth, and Fourteenth Amendments of the Constitution of the United States of America.

170.   Jurisdiction if conferred under 28 U.S.C. §1331 and §1343(3).

171.   The defendant, Borough of Glassboro, through its agents servants and employees such as Mayor, John E. Wallace, III, all council members who passed a Resolution approving the subject ordinance, Police Chief, Ryan Knight, Municipal Judge, John J. Armano, Esq., Municipal Prosecutor, Amanda Mazzoni, Esq., and John Does, 1-100 ( a fictitious name for all past Mayors, Council Members, Police Chiefs, and all past and present police officers who, through their ministerial acts, issued a Complaint for a noise ordinance violation as well as all past Municipal Judges and Prosecutors who prosecuted and sentenced the class members under said ordinance), acting under the color of state law and / or in their individual capacities, conspired to deprive the plaintiffs and the class members of their Fourth, Eighth,

45

and Fourteenth Amendment rights by having them charged, prosecuted, and sentenced without probable cause under an unlawful and ultra vires ordinance.

172.    In furtherance of this agreement the defendants, John E. Wallace, III, all council members who passed a Resolution approving the subject ordinance, Police Chief, Ryan Knight, Municipal Judge, John J. Armano, Esq., Municipal Prosecutor, Amanda Mazzoni, Esq., and John Does, 1-100 ( a fictitious name for all past Mayors, Council Members, Police Chiefs, and all past and present police officers who issued a Complaint for a noise ordinance violation as well as all past Municipal Judges and Prosecutors who prosecuted and sentenced the class members under said ordinance)  ordered the enforcements, prosecution and sentencing of the plaintiffs and class members without probable cause.

173.    As a direct and proximate cause of the aforesaid acts of the defendants' and their agents, servants and employees, the plaintiffs and class members were deprived of their constitutional rights in violation of the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution; sustained stress, aggravation, and inconvenient, paid fines, court costs, legal fees, and completed community service.

**WHEREFORE,** plaintiffs demand judgment against the defendants for compensatory damages, punitive damages, attorney's fees, interest, costs, and for any other such relief the court deems fair and just.

46

## COUNT SIX
## (42 U.S.C 1983)
## Monnell Claim
## Enforcement of an Unlawful Policy

174.    The plaintiffs repeat and re-allege each of the foregoing facts as though more fully set forth herein.

175.    At all times relevant hereto the defendant Borough of Glassboro, through its agents, servants, and employees such as Mayor, John E. Wallace, III, all council members who passed a Resolution approving the subject ordinance, Police Chief, Ryan Knight, Municipal Judge, John J. Armano, Esq., Municipal Prosecutor, Amanda Mazzoni, Esq., and John Does, 1-100 ( a fictitious name for all past Mayors, Council Members, Police Chiefs, and all past and present police officers who issued a Complaint for a noise ordinance violation as well as all past Municipal Judges and Prosecutors who prosecuted and sentenced the class members under said ordinance) were authorized by state law to make policy for Defendant Borough of Glassboro.

176.    The defendant, Borough of Glassboro, uses a governing form with a with a weak mayor and legislative council structure, therefore its enabling legislation is derived from The Home Rule Act, N.J.S.A. 40:42-1 et seq. which gives municipalities the power to adopt ordinances for the preservation of public health, safety, and welfare, provided the subject matter is not preempted by state law.

177.    The New Jersey Constitution – Article IV, Section VII, Paragraph 11, permits municipalities to adopt local laws not inconsistent with general state laws— and this forms the constitutional basis for Home Rule.

47

178. Acting under Color of State law and / or in their individual capacities, the defendants intentionally, knowingly, recklessly and / or with deliberate indifference enacted a policy (ordinance §354-22 and its counterpart §327-3) that was illegal, ultra vires, without any force and defect, and thereby was unconstitutional.

179. The defendants' enforcement of its illegal, ultra vires, and unconstitutional policy (ordinance §354-22 and its counterpart §327-3) led to the plaintiffs and class members being issued Complaints by the defendant police force and then prosecuted by the defendant municipal prosecutor(s) and sentenced by the defendant municipal judge(s).

180. The violations of the rights of the plaintiffs and class members were the result of an official policy, custom, or practice that started with the Borough Council and Mayor through their adoption of ordinance §354-22 and its counterpart §327-3, followed by the widespread, permanent, and well-settled custom and practice of enforcing §354-22 and its counterpart §327-3 over almost 50 years by the Borough's Police Department, Municipal Prosecutor, and the Municipal Court Judge who, together and in concert, wrongfully charged, prosecuted, and sentenced each plaintiff and class member under the unlawful, void, and Ultra Vires ordinance §354-22 and its counterpart §327-3.

181. As a direct and proximate cause of the aforesaid defendants' actions, which were the moving force behind the asserted constitutional violates, the plaintiffs and class members were deprived of their constitutional rights in violation of the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution; sustained stress, aggravation, and inconvenient, paid fines, court costs, legal fees, and completed community service.

48

**WHEREFORE,** plaintiffs demand judgment against the defendants for compensatory damages, punitive damages, attorney's fees, interest, costs, and for any other such relief the court deems fair and just.

## CERTIFICATION PURSUANT TO R. 4:5-1(b)(2)

I certify that, to the best of my knowledge, the matter in controversy is not the subject of any other action pending in any court or of any pending arbitration proceeding and no other action or arbitration proceeding is contemplated. At the present time, I do not know the names of any parties who should be joined in this Action.

## JURY DEMAND PURSUANTE TO RULE 4:35-1

Plaintiffs demand a trial by jury of the within issues.

## NOTICE OF DESIGNATION OF TRIAL COUNSEL PURSUANT TO R. 4:5-1(c)

Plaintiff hereby designates the undersigned, MICHAEL J. DEEM, Esq., as trial counsel in this matter.

**R.C. SHEA & ASSOCIATES, P.C.**
Attorneys for Plaintiffs

*Michael J. Deem*
MICHAEL J. DEEM, ESQ.

Dated: August 26, 2025

49

EXHIBIT "A"

Borough of Glassboro, NJ

### § 354-22. Creation of loud and unreasonable noise.[1] [Amended 7-24-1979 by Ord. No. 79-12]

A.   The making, creation or permitting of any unreasonably loud, disturbing and unnecessary noise in the Borough of Glassboro is hereby prohibited.

B.   The making, creating or permitting of any loud and unnecessary noise of such character, intensity and duration as to be detrimental to the life, health and welfare of any individual or which, either steadily or intermittently, annoys, disturbs, injures or endangers the comfort, repose, peace or safety of any individual is hereby prohibited.

C.   An owner, landlord or tenant, as hereafter defined, shall be guilty of permitting the conduct proscribed by Subsections A and B above if he assists, aids, abets or suffers such conduct by others upon his premises, either by overt act, by failure to act or by lack of supervision and control over others upon his premises.

D.   Definitions. For purposes of this section, the following definitions shall apply:

LANDLORD — Any person or persons who own or purport to own any building, structure or complex of buildings or structures in which there is rented or offered for rent housing space for living or dwelling purposes under either a written or oral lease.

O☐NER — The person or persons who own or purport to own any building, structure or complex of buildings or structures.

TENANT — Any person or persons who occupy or have the right to occupy any building, structure or complex of buildings or structures under either a written or oral lease.

E.   Violations and penalties. Any person violating any of the provisions of this section shall, upon conviction, be punished by one or more of the following, in the discretion of the court: [Added 8-23-2011 by Ord. No. 11-35; amended 6-26-2018 by Ord. No. 18-30]

(1)   A mandatory fine of not less than $200 and not more than $2,000;

(2)   Imprisonment not to exceed 90 days;

(3)   A period of community service not to exceed 90 days.

---

1.   Editor's Note: See also Ch. 327, Noise.

Downloaded from https://ecode360.com/GL0316 on 2025-05-14

EXHIBIT "B"

Borough of Glassboro, NJ

### § 327-1. Title.

This chapter may be cited as the "Noise Control Ordinance of the Borough of Glassboro."

### § 327-2. Definitions. [Amended 5-28-2002 by Ord. No. 02-10]

As used in this chapter, the following terms shall have the meanings indicated:

BUSINESS — Any commercial, industrial and/or nonresidential activity.

PERSON — Includes any individual, corporation, firm, association, club or partnership.

PLAINLY AUDIBLE — Any sound that can be detected by a person using his or her unaided hearing faculties. The detection of the rhythmic bass component of music is sufficient to constitute a plainly audible sound.

### § 327-3. Restricted uses and activities; hours. [Amended 5-22-2001 by Ord. No. 01-27; 5-28-2002 by Ord. No. 02-10]

A. Personal or commercial music amplification or reproduction equipment or other machine or device for the production or reproduction of sound shall not be operated in such a manner that it is plainly audible at a distance of 50 feet in any direction from the operator between the hours of 8:00 a.m. and 10:00 p.m. Between the hours of 10:00 p.m. and 8:00 a.m., sound from such equipment shall not be plainly audible at a distance of 25 feet in any direction from the operator.

B. Self-contained, portable, handheld music or sound-amplification or -reproduction equipment shall not be operated on a public space or public right-of-way in such a manner as to be plainly audible at a distance of 50 feet in any direction from the operator between the hours of 8:00 a.m. and 10:00 p.m. Between the hours of 10:00 p.m. and 8:00 a.m., sound from such equipment shall not be plainly audible by any person other than the operator.

### § 327-4. Disturbing peace with noise.

No person shall create any unreasonably loud disturbance or unnecessary noise of such character, intensity or duration as to disturb the peace, quiet and comfort of the neighboring residents, or to the annoyance or inconvenience of travelers on the streets or persons in neighboring premises. The creation of any unreasonably loud, disturbing and unnecessary noise in the Borough is hereby prohibited. There is further prohibited any noise of such character, intensity or duration as is detrimental to the life or health of any individual.

### § 327-5. Authorized activities exempted.

Nothing herein contained shall be construed to prohibit playing by a band in any authorized parade or orchestra in a hall or building for the purpose of dancing or entertainment or religious service or community sponsored or operated.

### § 327-6. Audible advertising restricted; permit required.

A. No person shall, for advertising purposes or for the purpose of attracting the attention of the passing public, play, use, operate or permit to be played, used or operated any radio,

Downloaded from https://ecode360.com/GL0316 on 2025-05-14

Borough of Glassboro, NJ
§ 327-6                                                                                   § 327-12

receiving set, musical instrument, jukebox, phonograph, loudspeaker, sound amplifier or other machine or device for the producing or reproducing of sound on the streets or public places of the Borough of Glassboro or in any place where the sound therefrom is cast directly upon the streets or public places or which is so placed and operated that the sound therefrom can be heard to the annoyance or inconvenience of travelers upon any street or public place or persons in the immediate neighboring premises.

B.  No person shall use or operate any sound truck or any loudspeaker or sound amplifier or radio or phonograph with a loudspeaker or sound amplifier on any vehicle upon the streets or public places of the Borough of Glassboro unless a permit has been obtained as otherwise provided by Borough ordinance.

### § 327-7. Unnecessary sounding of warning devices and unreasonable sounds.

No person shall sound any horn or warning device on any automobile, motorcycle, bus or other vehicle except when required by law or when necessary to give timely warning of the approach of a vehicle or as a warning of impending danger to persons driving other vehicles or to persons upon the street. No person shall sound any horn or warning device on any automobile, motorcycle, bus or other vehicle which shall emit an unreasonably loud or harsh sound or for an unnecessary or unreasonable period of time.

### § 327-8. Construction operations: weekday and/or weekend hours; distances; emergency permit. [Amended 6-24-2008 by Ord. No. 08-45; 1-27-2009 by Ord. No. 09-01]

No individual, person, corporation, business entity, partnership or sole proprietor shall, on any day of the week or weekends between the hours of 6:00 p.m. and 7:00 a.m., perform any excavation, demolition, construction, alteration, repair or any other type of building operation which is within 1,000 feet of any dwelling or business property, nor operate or use any steam shovels, tractors, excavators, pneumatic hammers, pile drivers, derricks, steam or electric hoists or any tools or equipment which shall make any loud or disturbing noise, except in cases of urgent necessity in the interests of public safety, and then only upon obtaining a permit from the Building Inspector.

### § 327-9. Prohibited hours for audible advertising by peddlers.

No hawker, peddler or vendor shall sound or cry out his wares upon any street or public place between the hours of 7:00 p.m. and 7:00 a.m.

### § 327-10. Hours of noisy business operations.

No business shall create or permit in connection with the conduct of its business any loud or excessive noise in connection with the loading or unloading of any vehicle or other opening or destruction of any boxes, crates or other containers between the hours of 10:00 p.m. and 6:00 a.m.

### § 327-11. Business use of noise-generating equipment.

No person shall use any drum, loudspeaker or other instrument or device or create any noise for the purpose of attracting attention to any performance, show or sale or display of merchandise, wares and other goods for sale.

Downloaded from https://ecode360.com/GL0316 on 2025-05-14

Borough of Glassboro, NJ
§ 327-12                                                                            § 327-14

## § 327-12. Noise in quiet zones; signs.

No person shall create any loud or excessive noise on any street adjacent to any school, institutions of learning or to any hospital which shall unreasonably interfere with the workings of such institutions, provided that conspicuous signs are displayed in such streets indicating that the same is a school or hospital street.

## § 327-12.1. Engine compression brake. [Added 7-24-2012 by Ord. No. 12-41]

A.  Definitions. The following definitions shall apply to this section:

ENGINE COMPRESSION BRAKE — Any device that utilizes air compression and/or rapid release of compressed air in the cylinders of engines to slow or retard vehicle speed. Examples include, but are not limited to, Jacobs® engine brake, also known as "jake brake" engine retarder; Pacbrake® engine brake; TecBrake engine brake; D-Celerator® diesel exhaust brake; and similar devices that meet the definition.

NOISE-BAFFLING DEVICE — A properly functioning muffler or engine exhaust silencer that eliminates the offensive and disturbing noise caused by use of engine compression brakes. The muffler or engine exhaust silencer must reduce the noise to levels meeting vehicle noise emission standards set or authorized by the Noise Control Act (42 U.S.C. § 4901 et seq.) and the United States Environmental Protection Agency, and must also comply with all other federal, state or local laws and regulations relating to vehicle noise levels.

PUBLIC SAFETY VEHICLE — Any vehicle operated by the Borough of Glassboro Fire Department or the Borough of Glassboro Police Department or any other emergency vehicle operated by a state, county and/or local agency.

B.  Use of engine compression brake prohibited. It shall be unlawful for the operator of a motor vehicle to engage, or allow to be engaged, operate or use an engine compression brake, or any similar mechanical exhaust device designed to aid in the deceleration of any vehicle which results in the emission of excessive and loud noise from the vehicle, while the vehicle is operated on any public roadway within the municipal limits of the Borough of Glassboro, County of Gloucester, State of New Jersey.

C.  Exclusions. This new section shall not apply to operators of any of the following:

(1)  A public safety vehicle; or

(2)  A vehicle involved in an emergency wherein the operator of said vehicle reasonably believes that use of the engine compression brake is necessary to avoid or mitigate a collision or accident.

## § 327-13. Enforcement.

Any provision of this chapter may be enforced by the local Construction Official, Health Inspector, Police Department or any citizen.

## § 327-14. Violations and penalties. [Amended at time of adoption of Code (see Ch. 1,

Downloaded from https://ecode360.com/GL0316 on 2025-05-14

Borough of Glassboro, NJ
§ 327-14                                                                                          § 327-15

**General Provisions, Art. I)]**

Any person who violates any provision of this chapter shall be subject to a fine of not more than $2,000, imprisonment for not more than 90 days or community service for not more than 90 days, or any combination thereof, for each offense . Each day of violation of any provision of this chapter shall constitute a separate offense.

**§ 327-15. Additional remedies.**

A.  The operation or maintenance of any noise source in violation of any provision of this chapter shall be deemed and is declared to be a public nuisance and may be subject to abatement summarily by a restraining order or injunction issued by a court of competent jurisdiction or in any other manner available for the abatement of public nuisances.

B.  Other remedies. No provision of this chapter shall be construed to impair any common law or statutory cause of action, or legal remedy therefrom, of any person for injury or damage arising from any violation of this chapter or from other law.

Downloaded from https://ecode360.com/GL0316 on 2025-05-14

November 14, 2023

## ☐ O☐E☐ NOISE CON☐☐O☐ O☐☐☐NANCE

This model is provided by the NJ Department of Environmental Protection (Department) as guidance for municipalities to follow when adopting a noise control ordinance pursuant to the State's Noise Control Act and seeking to establish specific decibel standards to control noise. All such ordinances must be submitted for written approval to the Department, including an ordinance that is based entirely on the model ordinance provided below.

For assistance, please contact the Department's Office of Local Environmental Management at (609) 292-1305.

**☐ro☐edures for ☐ ritten A☐☐ro☐al by the ☐e☐artment:**

(A)     A governing body of a municipality may adopt this model ordinance without change. Changes in formatting, numbering, or any other changes of this type shall not be considered significant changes. ☐ ithin 30 days after a municipality adopts this ordinance, the municipality shall submit it to the Department, with a certification signed by the Township Clerk, Borough Manager or Administrator. The certification shall state:

I certify that ☐Insert name of municipality☐has adopted the Model Noise Control Ordinance without change(s). I further certify that if this statement is willfully false, I am subject to a penalty.

This ordinance shall be approved in writing upon submission by a municipality to the Department, of the fully executed certification and duly adopted noise ordinance. In addition, in the event that a regional or county health agency is identified as the authorized enforcement agency for the purpose of enforcing this ordinance when adopted by a municipality, written consent of the regional or a county health agency must be obtained, affixed to the ordinance and made a part thereof noise ordinances shall be submitted to:

NE☐ JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION
LEGAL AND REGULATORY AFFAIRS
OFFICE OF ENFORCEMENT POLICY
BUREAU OF LOCAL ENVIRONMENTAL MANAGEMENT AND RIGHT TO KNO☐
401 EAST STATE STREET
4TH FLOOR
MAIL CODE 401-04N
P.O. BO☐ 420
TRENTON, NE☐ JERSEY 08625-0420

(B)     If a governing body of a municipality wants to change any provision(s) of this model ordinance such as hours of operation as it applies to subsequent sections, or wants to develop a noise ordinance that is not based on the model, the entire noise control ordinance including the proposed change(s) shall be submitted to the Department for review and approval, prior to adoption. The Department will review such noise ordinances to determine consistency with the statewide scheme for noise control and whether the ordinance is more stringent than the State☐ noise code, in accordance with the Noise Control Act.

If the Department approves the change(s), the municipality shall submit a copy of the duly adopted ordinance to the CEHA agency governing its region, if one exists.

- 1 -

November 14, 2023

If the Department disapproves the change(s), the ordinance shall be returned to the municipality and shall be considered disapproved, meaning that the municipality cannot enforce it.

(C)    The Department reserves the right to review, at any time, a noise control ordinance adopted by a municipality.

☐he model noise ordinan☐e follo☐s:

## ☐ O☐E☐ NO☐SE O☐☐☐NANCE

☐    ☐e☐aration of ☐indin☐s and ☐oli☐y

☐ HEREAS excessive sound is a serious hazard to the public health, welfare, safety, and the quality of life; and, ☐ HEREAS a substantial body of science and technology exists by which excessive sound may be substantially abated; and, ☐ HEREAS the people have a right to, and should be ensured of, an environment free from excessive sound,

Now THEREFORE, it is the policy of ☐insert name of muni☐i☐ality☐ to prevent excessive sound that may jeopardize the health, welfare, or safety of the citizens or degrade the quality of life.

This ordinance shall apply to the control of sound originating from sources within ☐insert name of muni☐☐ality☐

☐    ☐efinitions

The following words and terms, when used in this ordinance, shall have the following meanings, unless the context clearly indicates otherwise.  Terms not defined in this ordinance have the same meaning as those defined in N.J.A.C. 7:29.

"Construction" means any site preparation, assembly, erection, repair, alteration or similar action of buildings or structures.

"dBC" means the sound level as measured using the "C" weighting network with a sound level meter meeting the standards set forth in ANSI S1.4-1983 or its successors. The unit of reporting is dB(C). The "C" weighting network is more sensitive to low frequencies than is the "A" weighting network.

"Demolition" means any dismantling, destruction or removal of buildings, structures, or roadways.

"Department" means the New Jersey Department of Environmental Protection.

"Emergency work" means any work or action necessary at the site of an emergency to restore or deliver essential services including, but not limited to, repairing water, gas, electricity, telephone, sewer facilities, or public transportation facilities, removing fallen trees on public rights-of-way, dredging navigational waterways, or abating life-threatening conditions or a state of emergency declared by a governing agency.

"Impulsive sound" means either a single pressure peak or a single burst (multiple pressure peaks) that has a duration of less than one second.

"Minor Violation" means a violation that is not the result of the purposeful, reckless or criminally

- 2 -

November 14, 2023

negligent conduct of the alleged violator; and/or the activity or condition constituting the violation has not been the subject of an enforcement action by any authorized local, county or state enforcement agency against the violator within the immediately preceding 12 months for the same or substantially similar violation.

"Motor vehicle" means any vehicle that is propelled other than by human or animal power on land.

"Muffler" means a properly functioning sound dissipative device or system for abating the sound on engines or equipment where such device is part of the normal configuration of the equipment.

"Multi-dwelling unit building" means any building comprising two or more dwelling units, including, but not limited to, apartments, condominiums, co-ops, multiple family houses, townhouses, and attached residences.

"Multi-use property" means any distinct parcel of land that is used for more than one category of activity. Examples include, but are not limited to:

1.    A commercial, residential, industrial or public service property having boilers, incinerators, elevators, automatic garage doors, air conditioners, laundry rooms, utility provisions, or health and recreational facilities, or other similar devices or areas, either in the interior or on the exterior of the building, which may be a source of elevated sound levels at another category on the same distinct parcel of land; or

2.    A building, which is both commercial (usually on the ground floor) and residential property, located above, below or otherwise adjacent to.

"Noise Control Officer" (NCO) means an employee of a local, county or regional health agency which is certified pursuant to the County Environmental Health Act (N.J.S.A. 26:3A2-21 et seq.) to perform noise enforcement activities or an employee of a municipality with a Department-approved model noise control ordinance. All NCOs must receive noise enforcement training as specified by the Department in N.J.A.C. 7:29 and is currently certified in noise enforcement. The employee must be acting within his or her designated jurisdiction and must be authorized to issue a summons.

"Noise Control Investigator" (NCI) means an employee of a municipality, county or regional health commission that has a Department-approved model noise control ordinance and the employee has not received noise enforcement training as specified by the Department in N.J.A.C. 7:29. However, they are knowledgeable about their model noise ordinance and enforcement procedures. A Noise Control Investigator may only enforce sections of the ordinance that do not require the use of a sound level meter. The employee must be acting within his or her designated jurisdiction and must be authorized to issue a summons.

"Plainly audible" means any sound that can be detected by a NCO or an NCI using his or her unaided hearing faculties of normal acuity. As an example, if the sound source under investigation is a portable or vehicular sound amplification or reproduction device, the detection of the rhythmic bass component of the music is sufficient to verify plainly audible sound. The NCO or NCI need not determine the title, specific words, or the artist performing the song.

"Private right-of-way" means any street, avenue, boulevard, road, highway, sidewalk, alley or easement that is owned, leased, or controlled by a non-governmental entity.

- 3 -

November 14, 2023

"Public right-of-way" means any street, avenue, boulevard, road, highway, sidewalk, alley or easement that is owned, leased, or controlled by a governmental entity.

"Public space" means any real property or structures thereon that are owned, leased, or controlled by a governmental entity.

"Real property line" means either (a the vertical boundary that separates one parcel of property (i.e., lot and block) from another residential or commercial property; (b) the vertical and horizontal boundaries of a dwelling unit that is part of a multi-dwelling unit building; or (c) on a multi-use property as defined herein, the vertical or horizontal boundaries between the two portions of the property on which different categories of activity are being performed (e.g., if the multi-use property is a building which is residential upstairs and commercial downstairs, then the real property line would be the interface between the residential area and the commercial area, or if there is an outdoor sound source such as an HVAC unit on the same parcel of property, the boundary line is the exterior wall of the receiving unit). Note- this definition shall not apply to a commercial source and a commercial receptor which are both located on the same parcel of property (e.g., a strip mall).

"Sound production device" means any device whose primary function is the production of sound, including, but not limited to any, musical instrument, loudspeaker, radio, television, digital or analog music player, public address system or sound-amplifying equipment.

"Sound reduction device" means any device, such as a muffler, baffle, shroud, jacket, enclosure, isolator, or dampener provided by the manufacturer with the equipment, or that is otherwise required, that mitigates the sound emissions of the equipment.

" eekday" means any day that is not a federal holiday, and beginning on Monday at 7:00 a.m. and ending on the following Friday at 6:00 p.m.

" eekends" means beginning on Friday at 6:00 p.m. and ending on the following Monday at 7:00 a.m.

## A li ability

(A)   This model noise ordinance applies to sound from the following property categories:

  1.   Industrial facilities;
  2.   Commercial facilities;
  3.   Community service facilities;
  4.   Residential properties;
  5.   Multi-use properties;
  6.   Public and private right-of-ways;
  7.   Public spaces; and
  8.   Multi-dwelling unit buildings.

(B)   This model noise ordinance applies to sound received at the following property categories:

  1.   Commercial facilities;
  2.   Community service facilities (i.e. non-profits and/or religious facilities)
  3.   Residential properties;
  4.   Multi-use properties;

- 4 -

November 14, 2023

      5.     Multi-dwelling unit buildings.

    (C)     Sound from stationary emergency signaling devices shall be regulated in accordance with N.J.A.C. 7:29-1.4, except that the testing of the electromechanical functioning of a stationary emergency signaling device shall not meet or exceed 10 seconds.

### [!].    E☐em☐tions

    (A)     Except as provided in I☐. and ☐. below, the provisions of this ordinance shall not apply to the exceptions listed at N.J.A.C. 7:29-1.5.

    (B)     Sound production devices required or sanctioned under the Americans with Disabilities Act (ADA), FEMA or other government agencies to the extent that they comply with the noise requirement of the enabling legislation or regulation.  Devices which are exempted under N.J.A.C. 7:29-1.5 shall continue to be exempted.

    (C)     Construction and demolition activities are exempt from the sound level limits set forth in tables I and II and III except as provided for in I☐. below.

### ☐.    Enfor☐ement Offi☐ers

    (A)     Noise Control Officers shall have the authority within their designated jurisdiction to investigate suspected violations of any section of this ordinance and pursue enforcement activities.

    (B)     Noise Control Investigators shall have the authority within their designated jurisdiction to investigate suspected violations of any section of this ordinance that do not require the use of a sound level meter (i.e., plainly audible, times of day and/or distance determinations) and pursue enforcement activities.

    (C)     Noise Control Officers and Investigators may cooperate with NCOs and NCIs of an adjacent municipality in enforcing one another's municipal noise ordinances.

### ☐☐    ☐easurement ☐roto☐ols

    (A)     Sound measurements made by a Noise Control Officer shall conform to the procedures set forth at N.J.A.C. 7:29-2, except that interior sound level measurements shall also conform with the procedures set forth in VIB of this ordinance and with the definition of "real property line" as contained herein.

    (B)     ☐hen conducting indoor sound level measurements across a real property line the measurements shall be taken at least three feet from any wall, floor or ceiling and all exterior doors and windows may, at the discretion of the investigator, be closed.  The neighborhood residual sound level shall be measured in accordance with N.J.A.C. 7:29-2.9(b)2.  ☐hen measuring total sound level, the configuration of the windows and doors shall be the same and all sound sources within the dwelling unit must be shut off (e.g., television, stereo). Measurements shall not be taken in areas which receive only casual use such as hallways, closets and bathrooms.

- 5 -

November 14, 2023

□□□   □ a□mum □ermissible Sound □e□els

   (A)    No person shall cause, suffer, allow, or permit the operation of any source of sound on any source property listed in III.(A) above in such a manner as to create a sound level that equals or exceeds the sound level limits set forth in Tables I, II or III when measured at or within the real property line of any of the receiving properties listed in Tables I, II or III except as specified in VI(B).

   (B)    Impulsive Sound

        Between 7:00 a.m. and 10:00 p.m., impulsive sound shall not equal or exceed 80 dBA. Between 10:00 p.m. and 7:00 a.m., impulsive sound which occurs less than four times in any hour shall not equal or exceed 80 dBA. Impulsive sound which repeats four or more times in any hour shall meet the requirements as shown in Table I.

□A□□E □
□ A□□ □□ □E□□ □SS□□□E A-□ E□□□□E□ SO□N□ □E□E□S
□ □E□ □ EAS□□E□ O□□□□OO□S

| RECEIVING PROPERTY CATEGORY | Residential property, or residential portion of a multi-use property | | Commercial facility, non-residential portion of a multi-use property, or community service facility |
|---|---|---|---|
| TIME | 7 a.m.-10 p.m. | 10 p.m.-7 a.m. | 24 hours |
| Maximum A-□ eighted sound level standard, dB | 65 | 50 | 65 |

- 6 -

November 14, 2023

TABLE II
MAXIMUM PERMISSIBLE A-WEIGHTED SOUND LEVELS
WHEN MEASURED INDOORS

| RECEIVING PROPERTY CATEGORY | Residential property, or residential portion of a multi-use property | | Commercial facility or non-residential portion of a multi-use property |
|---|---|---|---|
| TIME | 7 a.m.-10 p.m. | 10 p.m.-7 a.m. | 24 Hours |
| Maximum A-Weighted sound level standard, dB | 55 | 40 | 55 |

Note: Table II shall only apply when the source and the receptor are separated by a real property line and they also share a common or abutting wall, floor or ceiling, or are on the same parcel of property.

TABLE III
MAXIMUM PERMISSIBLE OCTAVE BAND
SOUND PRESSURE LEVELS IN DECIBELS

| Receiving Property Category | Residential property, or residential portion of a multi-use property | | Residential property, or residential portion of a multi-use property | | Commercial facility, non-residential portion of a multi-use property, or community service facility | Commercial facility or non-residential portion of a multi-use property |
|---|---|---|---|---|---|---|
| | OUTDOORS | | INDOORS | | OUTDOORS | INDOORS |
| Octave Band Center Frequency, Hz | Octave Band Sound Pressure Level, dB | | Octave Band Sound Pressure Level, dB | | Octave Band Sound Pressure Level, dB | Octave Band Sound Pressure Level, dB |
| Time | 7 a.m.-10 p.m. | 10 p.m.-7 a.m. | 7 a.m.-10 p.m. | 10 p.m.-7 a.m. | 24 hours | 24 hours |
| 31.5 | 96 | 86 | 86 | 76 | 96 | 86 |
| 63 | 82 | 71 | 72 | 61 | 82 | 72 |
| 125 | 74 | 61 | 64 | 51 | 74 | 64 |
| 250 | 67 | 53 | 57 | 43 | 67 | 57 |

- 7 -

November 14, 2023

| 500 | 63 | 48 | 53 | 38 | 63 | 53 |
|---|---|---|---|---|---|---|
| 1,000 | 60 | 45 | 50 | 35 | 60 | 50 |
| 2,000 | 57 | 42 | 47 | 32 | 57 | 47 |
| 4,000 | 55 | 40 | 45 | 30 | 55 | 45 |
| 8,000 | 53 | 38 | 43 | 28 | 53 | 43 |

Note: ☐ hen octave measurements are made, the sound from the source must be constant in level and character. If octave band sound pressure level variations exceed plus or minus 2 dB in the bands containing the principal source frequencies, discontinue the measurement.

☐☐☐☐   Sound ☐rodu☐tion ☐e☐i☐es

No person shall cause, suffer, allow, or permit the operation of any sound production device in such a manner that the sound crosses a property line and raises the total sound levels above the neighborhood residual sound level by more than the permissible sound level limits set forth in Table IV when measured within the residence of a complainant according to the measurement protocol in VI(B) of this ordinance. These sound level measurements shall be conducted with the sound level meter set for "C" weighting, "fast" response.

☐A☐☐E ☐☐

☐ A☐☐☐ ☐☐ ☐E☐☐ ☐SS☐☐☐E ☐NC☐EASE ☐N ☐O☐A☐ SO☐N☐ ☐E☐E☐S

☐ ☐☐☐☐N A ☐ES☐☐EN☐☐A☐ ☐☐O☐E☐☐☐

| ☐ eeknights<br>10:00 p.m. - 7:00 a.m.<br>☐ eekend nights<br>11:00 p.m. and 9:00 a.m. | All other times |
|---|---|
| 3 dB(C) | 6 dB(C) |

☐☐.   ☐estri☐ted ☐ses and A☐ti☐ities

Note: ☐his se☐tion is o☐tional; any numbered ☐ara☐ra☐h may be ado☐ted in its entirety.

The following standards shall apply to the activities or sources of sound set forth below:

A.   Power tools, home maintenance tools, landscaping and/or yard maintenance equipment, excluding when used for emergency work, shall not be operated on a residential property between the hours of 8:00 p.m. and 8:00 a.m., unless such activities can meet the applicable limits set forth in Tables I, II and III. At all other times, the limits set forth in Tables I, II and III do not apply. All motorized equipment used in these activities shall be operated with an original, properly functioning, manufacture installed muffler and/or sound reduction device or an original equipment manufacturer (OEM) acoustically equivalent muffler and/or sound reduction device.

B.   Power tools, landscaping and/or yard maintenance equipment, excluding when used for

- 8 -

November 14, 2023

emergency work, shall not be operated on a commercial facility, community service facility, industrial facility, or public space unless such activities can meet the applicable limits set forth in Tables I, II and III. All motorized equipment used in these activities shall be operated with an original, properly functioning, manufacture installed muffler and/or sound reduction device or an OEM acoustically equivalent muffler and/or sound reduction device.

C.    Construction and demolition activity, excluding emergency work, shall not be performed between the hours of 6:00 p.m. and 7:00 a.m. on weekdays, or between the hours of 6:00 p.m. and 9:00 a.m. on weekends and federal holidays, unless such activities can meet the applicable limits set forth in Tables I, II and III. At all other times, the limits set forth in Tables I, II or III do not apply. All motorized equipment used in construction and demolition activity shall be operated with an original, properly functioning, manufacture installed muffler and/or sound reduction device or an OEM acoustically equivalent muffler and/or sound reduction device.

D.    Motorized snow removal equipment shall be operated with a muffler and/or a sound reduction device when being used for snow removal. At all other times the limits set forth in Tables I, II or III do not apply.

E.    All interior and exterior burglar alarms of a building or motor vehicle must be activated in such a manner that the burglar alarm terminates its operation within five (5) minutes for continuous airborne sound and fifteen (15) minutes for intermittent sound after it has been activated. At all other times the limits set forth in Tables I, II or III do not apply.

F.    Self-contained, portable, non-vehicular music or sound production devices shall not be operated on a public space or public right-of-way in such a manner as to be plainly audible at a distance of 50 feet in any direction from the operator between the hours of 8:00 a.m. and 10:00 p.m. Between the hours of 10:00 p.m. and 8:00 a.m., sound, operated on a public space or public right-of-way, from such equipment shall not be plainly audible at a distance of 25 feet in any direction from the operator;

G.    It shall be unlawful for any property owner or tenant to allow any domesticated or caged animal to create a sound across a real property line which unreasonably disturbs or interferes with the peace, comfort, and repose of any resident, or to refuse or intentionally fail to cease the unreasonable noise when ordered to do so by a Noise Control Officer or Noise Control Investigator. Prima facie evidence of a violation of this section shall include but not be limited to:

(1)    Vocalizing (howling, yelping, barking, squawking etc.) for five (5) minutes without interruption, defined as an average of four or more vocalizations per minute in that period; or,

(2)    Vocalizing for twenty (20) minutes intermittently, defined as an average of two vocalizations or more per minute in that period.

It is an affirmative defense under this subsection that the dog or other animal was intentionally provoked to bark or make any other noise.

- 9 -

November 14, 2023

D.      □ otor □ehi□es

**Note: □his se□tion is o□tional; any numbered □ara□ra□h may be ado□ted in its entirety.**

Violations of each paragraph of this section shall be considered purposeful and therefore non-minor violations.

(A)     No person shall remove or render inoperative, or cause to be removed or rendered inoperative or less effective than originally equipped, other than for the purposes of maintenance, repair, or replacement, of any device or element of design incorporated in any motor vehicle for the purpose of noise control. No person shall operate a motor vehicle or motorcycle which has been so modified. A vehicle not meeting these requirements shall be deemed in violation of this provision if it is operated stationary or in motion in any public space or public right-of-way.

(B)     No motorcycle shall be operated stationary or in motion unless it has a muffler that complies with and is labeled in accordance with the Federal Noise Regulations under 40 CFR Part 205.

(C)     Personal or commercial vehicular music amplification or reproduction equipment shall not be operated in such a manner that it is plainly audible at distance of 25 feet in any direction from the operator between the hours of 10:00 p.m. and 8:00 a.m.

(D)     Personal or commercial vehicular music amplification or reproduction equipment shall not be operated in such a manner that is plainly audible at a distance of 50 feet in any direction from the operator between the hours of 8:00 a.m. and 10:00 p.m.

□□    Enfor□ement

(A)     Violation of any provision of this ordinance shall be cause for a Notice of Violation (NOV) or a Notice of Penalty Assessment (NOPA) document to be issued to the violator by the Noise Control Officer or Noise Control Investigator.

(B)     Any person who violates any provision of this ordinance shall be subject to a civil penalty for each offense of not more than the maximum penalty pursuant to N.J.S.A. 40:49-5, which is $2,000 as of December 2014. If the violation is of a continuing nature, each day during which it occurs shall constitute an additional, separate, and distinct offense.

(C)     Upon identification of a violation of this Ordinance the Noise Control Officer or Noise Control Investigator shall issue an enforcement document to the violator. The enforcement document shall identify the condition or activity that constitutes the violation and the specific provision of this Ordinance that has been violated. It shall also indicate whether the violator has a period of time to correct the violation before a penalty is sought.

(D)     If the violation is deemed by the Noise Control Officer or Noise Control Investigator to be a minor violation (as defined in Section II of this ordinance) a NOV shall be issued to the violator.

        1.    The document shall indicate that the purpose of the NOV is intended to serve as a notice to warn the responsible party/violator of the violation conditions in order to provide them with an opportunity to voluntarily investigate the matter and voluntarily

- 10 -

November 14, 2023

take corrective action to address the identified violation.

2.   The NOV shall identify the time period (up to 90 days), pursuant to the Grace Period Law, N.J.S.A. 13:1D-125 et seq. where the responsible party's/violator's voluntary action can prevent a formal enforcement action with penalties issued by the (Health Department) ☐☐☐☐☐☐☐☐☐ It shall be noted that the NOV does not constitute a formal enforcement action, a final agency action or a final legal determination that a violation has occurred. Therefore, the NOV may not be appealed or contested.

(E)   If the violation is deemed by the Noise Control Officer or Noise Control Investigator to be a non-minor violation, the violator shall be notified that if the violation is not immediately corrected, a NOPA with a civil penalty of not more than the maximum penalty allowed pursuant to N.J.S.A. 40:49-5, which is $2,000 as of December 2014, will be issued. If a non-minor violation is immediately corrected, a NOV without a civil penalty shall still be issued to document the violation. If the violation occurs again (within 12 months of the initial violation) a NOPA shall be issued regardless of whether the violation is immediately corrected or not.

(F)   The violator may request from the Noise Control Officer or Noise Control Investigator, an extension of the compliance deadline in the enforcement action. The Noise Control Officer or Noise Control Investigator shall have the option to approve any reasonable request for an extension (not to exceed 180 days) if the violator can demonstrate that a good faith effort has been made to achieve compliance. If an extension is not granted and the violation continues to exist after the grace period ends, a NOPA shall be issued.

(G)   The recipient of a NOPA shall be entitled to a hearing in a municipal court having jurisdiction to contest such action.

(H)   The Noise Control Officer or Noise Control Investigator may seek injunctive relief if the responsible party does not remediate the violation within the period of time specified in the NOPA issued.

(I)   Any claim for a civil penalty may be compromised and settled based on the following factors:

1.   Mitigating or any other extenuating circumstances;

2.   The timely implementation by the violator of measures which lead to compliance;

3.   The conduct of the violator; and

4.   The compliance history of the violator.

☐☐☐   Consistency, Severability and Repealer

(A)   If any provision or portion of a provision of this ordinance is held to be unconstitutional, preempted by Federal or State law, or otherwise invalid by any court of competent jurisdiction, the remaining provisions of the ordinance shall not be invalidated.

(B)   All ordinances or parts of ordinances, which are inconsistent with any provisions of this ordinance, are hereby repealed as to the extent of such inconsistencies.

- 11 -

GLO-L-001154-25    08/27/2025 4:26:18 PM    Pg 68 of 68    Trans ID: LCV20252353064

November 14, 2023

(C)    No provision of this ordinance shall be construed to impair any common law or statutory cause of action, or legal remedy there from, of any person for injury or damage arising from any violation of this ordinance or from other law.

- 12 -

# EXHIBIT "B"

Jarif Alam, Anthony Autenrieth, Salem Barzak, Jason Blunt, Anthony Boccio, Brian Deem, Christopher Dineen, Kuba Jagoda, Nashawn Jones, Ryan Kennedy, Nick Kistner, Quintin Llano, Timothy Mancivalano, Adrian Martinez, Michael Niedjieicki, Ethan Raderman, Jonathan Rembish, Crosby Ruhalter, Michael Shaw, Gavin Singer, Ariel Lopez Torres, Shane Yiu, on behalf of themselves and a class of all other similarly situated residential and commercial customers,

Plaintiff

vs.

Borough of Glassboro, et al.        Defendant

SUPERIOR Court of New Jersey
Law Division
Gloucester County
Docket Number: GLO-L-001154-25

## AFFIDAVIT OF SERVICE

(For Use by Private Service)



ARC2025005093

**Person to be served** (Name & Address):
Borough of Glassboro
1 South Main Street
Glassboro, NJ 08028

**Attorney:**
Michael J. Deem, ESQ

**Papers Served:** SUMMONS, COMPLAINT AND CIS

**Service Data:**

Served Successfully __X__   Not Served _____   Date: 8/29/2025   Time: 12:57 pm   Attempts: _____

_____  Delivered a copy to him / her personally

_____  Left a copy with a competent household member over 14 years of age residing therein

___X___  Left a copy with a person authorized to accept service, e.g. managing agent, registered agent, etc.

Name of Person Served and relationship / title:

Sheila Ortiz _____

Deputy Clerk _____

**Description of Person Accepting Service:**

Sex: _F_   Age: _45+_   Height: _5'1_   Weight: _125_   Skin Color: _Hispanic_   Hair Color: _Black_

**Unserved:**

(  ) Defendant is unknown at the address furnished by the attorney
(  ) All reasonable inquiries suggest defendant moved to an undetermined address
(  ) No such street in municipality
(  ) No response on: _____ Date _____ Time
                     _____ Date _____ Time

(  ) Other: _____

**Comments or Remarks:**

**Server Data:**

Subscribed and Sworn to before me
on _____ by the affiant who is
personally known to me.

_____
NOTARY PUBLIC

THERESA A. DINGMAN
Notary Public, State of New Jersey
Comm. # 2227754
My Commission Expires 4/15/2028

I, Christopher Stewart, was at the time of service a competent adult not having a direct interest in the litigation.  I declare under penalty of perjury that the foregoing is true and correct.

_____      9/1/25
Signature of Process Server              Date

NJ SUMMONS
387 Herbertsville Road
Brick, NJ 08724
(732) 458-8202
Our Job Serial Number: ARC-2025005093
Ref: 16236

| | |
|---|---|
| Jarif Alam, Anthony Autenrieth, Salem Barzak, Jason Blunt, Anthony Boccio, Brian Deem, Christopher Dineen, Kuba Jagoda, Nashawn Jones, Ryan Kennedy, Nick Kistner, Quintin Llano, Timothy Mancivalano, Adrian Martinez, Michael Niedjieicki, Ethan Raderman, Jonathan Rembish, Crosby Ruhalter, Michael Shaw, Gavin Singer, Ariel Lopez Torres, Shane Yiu, on behalf of themselves and a class of all other similarly situated residential and commercial customers,   **Plaintiff** | SUPERIOR Court of New Jersey<br>Law Division<br>Gloucester County<br>Docket Number: GLO-L-001154-25 |

**AFFIDAVIT OF SERVICE**

(For Use by Private Service)



ARC2025005094

vs.

Borough of Glassboro, et al.        **Defendant**

**Person to be served** (Name & Address):
Mayor John E. Wallace, III c/o Borough of Glassboro
1 South Main Street
Glassboro, NJ 08028

**Attorney:**
Michael J. Deem, ESQ

**Papers Served:** SUMMONS, COMPLAINT AND CIS

**Service Data:**

Served Successfully __X__     Not Served_____     Date: 8/29/2025 ____     Time: 1:09 pm ____     Attempts:_____

_____ Delivered a copy to him / her personally

_____ Left a copy with a competent household member over 14 years of age residing therein

___X___ Left a copy with a person authorized to accept service, e.g. managing agent, registered agent, etc.

Name of Person Served and relationship / title:

Ed Malandro _____

Administrator _____

**Description of Person Accepting Service:**

Sex: M____   Age: 65____   Height: 5'11____   Weight: 190____   Skin Color: White_____   Hair Color: Gray/Balding____

**Unserved:**

( ) Defendant is unknown at the address furnished by the attorney
( ) All reasonable inquiries suggest defendant moved to an undetermined address
( ) No such street in municipality
( ) No response on: _____ Date _____ Time
                      _____ Date _____ Time

( ) Other: _____

**Comments or Remarks:**

**Server Data:**

Subscribed and Sworn to before me
on _____ by the affiant who is
personally known to me.

_____
NOTARY PUBLIC

THERESA A. DINGMAN
Notary Public, State of New Jersey
Comm. # 2227754
My Commission Expires 4/15/2028

I, Christopher Stewart, was at the time of service a
competent adult not having a direct interest in the
litigation.  I declare under penalty of perjury that the
foregoing is true and correct.

_____   9/1/25
Signature of Process Server              Date

NJ SUMMONS
387 Herbertsville Road
Brick, NJ 08724
(732) 458-8202
Our Job Serial Number: ARC-2025005094
Ref: 16236

Jarif Alam, Anthony Autenrieth, Salem Barzak, Jason Blunt, Anthony Boccio, Brian Deem, Christopher Dineen, Kuba Jagoda, Nashawn Jones, Ryan Kennedy, Nick Kistner, Quintin Llano, Timothy Mancivalano, Adrian Martinez, Michael Niedjieicki, Ethan Raderman, Jonathan Rembish, Crosby Ruhalter, Michael Shaw, Gavin Singer, Ariel Lopez Torres, Shane Yiu, on behalf of themselves and a class of all other similarly situated residential and commercial customers,

Plaintiff

                    vs.

Borough of Glassboro, et al.          Defendant

SUPERIOR Court of New Jersey
Law Division
Gloucester County
Docket Number: GLO-L-001154-25

## AFFIDAVIT OF SERVICE

(For Use by Private Service)



ARC2025005095

**Person to be served** (Name & Address):
Police Chief Ryan Knight, c/o Glassboro Police Department
1 South Main Street
Glassboro, NJ 08028

**Attorney:**
Michael J. Deem, ESQ

**Papers Served:** SUMMONS, COMPLAINT AND CIS

**Service Data:**

Served Successfully __X__     Not Served_____     Date: 8/29/2025_____     Time: 12:56 pm_____     Attempts:_____

_____     Delivered a copy to him / her personally

_____     Left a copy with a competent household member over 14 years of age residing therein

___X___        Left a copy with a person authorized to accept service, e.g. managing agent, registered agent, etc.

Name of Person Served and relationship / title:

Melissa Rovin

Authorized Per Department Procedure

**Description of Person Accepting Service:**

Sex: F____ Age: 50____ Height: 5'8____ Weight: 175____ Skin Color: White_____ Hair Color: Brown_____

**Unserved:**

( ) Defendant is unknown at the address furnished by the attorney
( ) All reasonable inquiries suggest defendant moved to an undetermined address
( ) No such street in municipality
( ) No response on: _____Date _____Time
                      _____Date _____Time

( ) Other: _____

**Comments or Remarks:**

**Server Data:**

Subscribed and Sworn to before me
on _1 SEPT 2025_ by the affiant who is personally known to me.

NOTARY PUBLIC

THERESA A. DINGMAN
Notary Public, State of New Jersey
Comm. # 2227754
My Commission Expires 4/15/2028

I, Christopher Stewart, was at the time of service a competent adult not having a direct interest in the litigation.  I declare under penalty of perjury that the foregoing is true and correct.

Signature of Process Server          9/1/25  Date

NJ SUMMONS
387 Herbertsville Road
Brick, NJ 08724
(732) 458-8202
Our Job Serial Number: ARC-2025005095
Ref: 16236